## Case No. 15,127.

### UNITED STATES v. FOLSOM.

[7 Sawy. 602.] [1]

District Court, N. D. California. June, 1859.

CALIFORNIA LAND GRANTS—JURISDICTION OF DISTRICT COURT—FINAL DECREES—CONFIRMATION OF SURVEYS.

[1. It seems that the decision of the supreme court in U. S. v Fossat, 21 How. [62 U. S.] 445, should not be construed as determining that none of the decrees heretofore rendered by the boards of land commissioners and the district courts are not final decrees because they do not embody and confirm an exact survey of the claims, or as deciding that final decrees, defining with precision the boundaries of the land, must be entered. The decision must, however, be understood as determining that, in all cases where a decree of comfirmation has been entered, and a survey under it has been made, on which a patent is about to issue, which survey is objected to as erroneous, it is the duty of the court to direct the survey to be returned to it, that it may hear and determine the questions of location and boundary which may be raised.]

[2. Quære, as to what parties may be heard to object to the survey.]

[3. Settlers claiming under the United States must make their objections through the district attorney, and cannot be heard as separate parties. See U. S. v. Bidwell, Case No. 14,592.]

[This was an appeal by the United States from a decision of the board of land commissioners confirming the Rancho Rio De Los Americanos to the claimant, J. L. Folsom, now deceased, and represented by his executors.]

The proceedings in this case were supplementary to final decree, and arose under the decision of the supreme court in the case of

U. S. v. Fossat, 21 How. [62 U. S.] 445, in which the supreme court determined that the power of the district court over the cause, under the acts of congress, does not terminate until the issue of a patent, conformably to the decree. The case was argued on the part of the United States by Edmund Randolph, and on the part of the claimants by R. Aug. Thompson and John J. Williams; and the discussion, generally, was participated in by many other members of the bar. The argument was made before both judges.

HOFFMAN, District Judge. A decree having been entered at a former term, confirming the claim in this case according to the boundaries mentioned in the grant, the appeal therefrom was, by consent of the district attorney, acting under the instructions of the attorney general, dismissed. A motion is now made that the survey be brought into court to be examined and passed upon, and that a final decree be entered confirming to the claimants the lands so surveyed. This motion is made that the court may exercise the jurisdiction which, by the recent decision of the supreme court in the case of U. S. v. Fossat, 21 How. [62 U. S.] 445, it is supposed to possess. As the same proceeding may be taken in the case of every claim confirmed by this court, and as the jurisdiction the court is invited to exercise is one it was not by any one suspected to possess until the decision referred to appeared, an argument on the point was called for, in the hope that, on a full discussion, some of the difficulties and embarrassments which were felt on all sides to surround the subject might be removed. It would be idle to conceal the fact that the question presented and the doubts raised by the recent decision of the supreme court have been found, by this court and the counsel engaged in these cases, in the highest degree perplexing and embarrassing. No construction of the opinion of the supreme court was suggested by which all the difficulties could be obviated or objections answered. But, as the latest decision of the supreme court on a class of cases to us, in California, of vital importance, it is the duty of this court to endeavor to ascertain its true interpretation, and the principles it establishes, and to adopt those principles in all cases to which they are applicable, without pretending to judge of their correctness, or to inquire, except to arrive at its meaning, how far previous decisions of the same court have been followed or overruled.

A brief statement of the case of U. S. v. Fossat [supra], as it was presented to the supreme court, is necessary to a correct understanding of its recent decision. The original decree of this court confirmed the claim to land within four external boundaries mentioned in the decree. Three, only, of these boundaries were designated in the grant, but it appeared to this court that the fourth, or northern boundary, the existence and location of which was not disputed, was sufficiently indicated by the petition and the diseño, to both of which the grant referred, as well as by the name (Capitancillos) of the land granted. The land within these boundaries was found to exceed, by a fraction, the quantity of one square league. But, as that quantity was described in the grant as "one league of the larger size, a little more or less, as is explained by the map accompanying the expediente," and as the supreme court, in the case of U. S. v. Sutherland [19 How. (60 U. S.) 363], has declared "that, in Mexican grants, a square league seems to have been the only unit of estimating the superficies of land," and that "if 'more or less' was intended in the grant, it was carefully stated," it seemed to this court that the whole land within the boundaries, and including an excess of a fractional part of the unit of measurement, might reasonably be considered as intended to be conveyed by a grant which described the quantity as "one league, a little more or less." The supreme court, however, decided these views to be erroneous, and held that, as only three boundaries were mentioned in the grant, the fourth must be run for quantity, "which was the only criterion for determining that boundary furnished by the grant"; that the words "more or less" must be disregarded, "as having no meaning in a system of survey and location like that of the United States," and the precise quantity of one league be considered to be clearly expressed; that "if the limitation of the quantity had not been so explicitly declared," it might have been proper to ascertain the fourth boundary by referring to the petition, the diseño, and to evidence, to ascertain what land was included in and known by the name of Capitancillos, but that no such reference or inquiries were admissible in that case, as the grant was free from ambiguity or uncertainty. The supreme court accordingly affirmed the claim "for one league of land, to be taken within the southern, western, and eastern boundaries designated in the grant, to be located at the election of the grantee or his assigns, under the restrictions established for the location and survey of private land claims in California by the executive department of the government." It further ordered that the "external boundaries designated in the grant may be declared by the district court from the evidence on file and such other evidence as may be produced before it." U. S. v. Fossat, 20 How. [61 U. S.] 427.

The duty thus imposed upon it this court thereupon proceeded to discharge. It was not suspected by the court, or suggested by any of the counsel, that that duty extended further than to "declare the three external boundaries mentioned in the grant," i. e. to designate them, unmistakably, in its decree, and to decide the vexed and only disputed question in the case, viz. whether the southern boundary was the ridge known as the

"lomas bajas," or the sierra behind it. The fourth boundary was, by the decision of the supreme court, to be determined by quantity alone; nor was this court required to declare it, for it was directed to declare only "the external boundaries designated in the grant, within which the land confirmed was to be located at the election of the grantee or his assigns, under the restrictions established by the executive department of the government. A decree was accordingly made by this court, in which the three external boundaries mentioned in the grant were "declared" and described with as much precision as was possible without a survey; and the only disputed question in the cause, as to what was the southern boundary (viz. the lomas bajas, or the main sierra), was elaborately discussed and decided. An appeal from this decree having been taken to the supreme court, it was dismissed as "improvidently taken and allowed." In its opinion, the court considers at large the nature and extent of the jurisdiction conferred on the district court by the act of March 3, 1851, and it decides that it possesses the power to inquire into and decide all questions of extent, locality, quantity, boundary, and legal operation which may arise in the cause. It further decides that, as, under the acts of 1824 [4 Stat. 52] and 1828 [Id. 284], it was the duty of the surveyor to fulfill the decree of the court, and the court had power to enforce the discharge of that duty, so, under the act of 1851 [9 Stat. 631], the duties of the surveyor begin under the same conditions, and the power of the district court over the same cause "does not terminate until the issue of the patent conformably to its decree."

It would seem that the right and the duty of the district court to control and correct surveys by the surveyor general, in all cases, could not be more explicitly declared. But the supreme court goes further. The appeal was dismissed because this court had not entered a final decree. And this court is directed to "ascertain the external lines of the land confirmed, and to enter a final decree of confirmation of that land." This direction, when taken in connection with the previous remarks of the court as to the power and duty of the district court, with respect to surveys, and also with the fact that this court had already declared the boundaries with as much precision as was practicable without a survey, can only mean that it must direct a survey to be made, and that said survey, when approved, must be embodied in a final decree of confirmation.

The decision of the supreme court is not based on the ground that this court has failed to execute any special mandate directed to it; for, as before stated, this court had been merely directed to declare "the external boundaries," not of the land confirmed, but "designated in the grant, within which the land was to be located at the election of the grantee or his assigns, under the restrictions established by the executive department of this government." As the three boundaries mentioned in the grant were not those of the land confirmed, but of the tract within which the one league confirmed was to be taken at the election of the grantee, subject to executive restrictions, and, as this court was directed to declare only those three boundaries, it is clear that it performed all the duties enjoined by the supreme court, and that the case was not remanded because the court had failed fully to comply with the previous mandate of the supreme court. This fact is, by the supreme court itself, admitted in its recent decision. "The district court," it states, "in conformity with the directions of the decree, declared the external lines on three sides of the tract claimed, leaving the other line to be completed by a survey to be made." 21 How. [62 U. S.] 447. The defect in the decree of this court must have been other that a nonconformity with the mandate of the supreme court. I have been unable to give any other construction to the opinion referred to than that this court, after declaring the three boundaries within which the league confirmed was to be taken, at the election of the grantee, and after the grantee had made his election, subject to executive restrictions, should have caused or permitted a survey to be made, and should have, by its final decree, confirmed the land so surveyed to the claimant.

Such being the clear purport of the decision, with regard to the case before the court, we are next to inquire to what extent the principles laid down are to be applied to the other cases. The view generally taken by the bar regards the decision as laying down new rules by which all the land cases in California are to be governed; and the case is considered to decide that the decree of this court, or of the supreme court, by which the authenticity and general boundaries of a grant are declared, are not "final decrees," but that the court is, in all cases, bound to direct a survey to be made, or to revise and to pass upon surveys already made, and by its final decree to adopt a survey, and declare with precision the boundaries of the tract confirmed. In support of this construction, reference is made to that portion of the opinion of the supreme court which decides that this court has, under the act of 1851, jurisdiction to determine all questions of extent, locality, and boundary, as fully as it was possessed by the courts under the laws of 1824 and 1828; to the declaration that the decrees of this court, hitherto supposed to be "final," were not final decrees under the judiciary act of 1789 [1 Stat. 73], and that the supreme court has entertained appeals from them by "a relaxation of its rules," rendered proper by the "peculiar nature of these cases"; and to the order at the close of the opinion that the appeal be dismissed as improvidently allowed, and that this court "proceed to enter a 'final decree' of confirmation of the land confirmed."

If the language of the opinion of the supreme court be alone considered, it is perhaps not easy to avoid giving to it this construction. But the objections to it seem insurmountable. The thirteenth section of the act of 1851 prescribes the duties of the surveyor general with regard to private land claims in California. It is declared to be his duty to "cause all private land claims in California, which shall be finally confirmed, to be accurately surveyed, and to furnish plats of the same," etc. It is obvious, therefore, that the final decree of confirmation must precede the survey, for, until the claim is finally confirmed, the surveyor is not required or authorized to act. Again: The tenth section provides that, in cases of appeals from the decisions of the board of commissioners, the district court shall proceed to render judgment, etc.. and shall, on application of the party against whom judgment is rendered, grant an appeal to the supreme court, etc. The authority to entertain such appeals is not explicitly given to the supreme court, but it results, by necessary implication, from the provisions above cited, and from the allusion in the fifteenth section to the "final decrees rendered by the said commissioners, or by the district or supreme courts of the United States." Unless, then, the decrees of this court which have been appealed from were in some sense "final decrees," it is not easy to perceive how the supreme court. by any relaxation of its rules, or from considerations of convenience, could have had jurisdiction to review them on appeal.

The fact that the supreme court has heretofore entertained, and will hereafter entertain, appeals from such decrees, must therefore be taken as proof that they regard those judgments and decrees as "final" and appealable under the act of 1851, though it appears that they are not final decrees under the judiciary act of 1789. It is also evident that such decrees must be final decrees of confirmation, and the lands confirmed must be deemed "finally confirmed," within the meaning of the thirteenth section; for, otherwise, the surveyor would have no authority, nor could he be required, under the provisions of that section, to survey them. A contrary construction would lead to the most important and perhaps disastrous consequences. It is well known that both the boards of commissioners, as well as both the district courts' of this state, in common with all the gentlemen of the bar, have hitherto regarded the decrees by which the authenticity and validity and the general boundaries of a claim have been declared, as "final decrees" of confirmation, under which the survey was to be made and a patent issued. In no case has a survey first been made and adopted or embodied in any subsequent final decree of confirmation. In pursuance of such decrees, or similar ones, by the supreme court, many patents have issued. If, then, it should be held that none of those decrees were final, and that the lands confirmed by them were not "finally confirmed," in the sense of the act of 1851, it might follow that the patents have been irregularly issued, and are void, as having been issued without authority of law. There also may be cases in which no appeal has been taken from the decision of the board to the district court, or in which such appeals have been dismissed. If, then, the decisions of the board are not final decisions or decrees, it is difficult to perceive how final decrees in those cases can be made. For the board has ceased to exist, and the district court may never have acquired jurisdiction over the cause. I am persuaded that a construction of the opinion of the supreme court involving such grave consequences, ought, if possible, to be rejected.

By referring to the cases cited by the supreme court in its opinion, viz., those of Mitchel v. U. S., 15 Pet. [40 U. S.] 52, and Sibbald v. U. S., 12 Pet. [37 U. S.] 488, as instances where the court directed, by its mandate, certain lands to be surveyed, and "maintained and declared the duty of the surveyors to fulfill the decree of the court," it will be found that the decrees of the supreme court, requiring those duties to be performed, are expressly called, by the court itself, its "final decrees." In Mitchel's Case, the language of the court is: "On consideration whereof, this court is of opinion that the title of the petitioner, etc., is valid by the laws of nations, etc., and doth finally order, decree, determine, and adjudge accordingly; and this court doth in like manner, order, adjudge, determine, and decree that the title of the petitioner is valid to so much of a certain other tract as shall not be included in an exception hereinafter made." And it proceeds to give particular directions for ascertaining the land so excepted. In Sibbald's Case, after declaring the duty of the surveyor to fulfill the decree of the court, it orders "that the clerk of this court make out a certificate of the final decree heretofore rendered in the case of Sibbald v. U. S., and. also, a mandate according to such final decree, the opinion of the court in that case and on these petitions." 12 Pet. [37 U. S.] 495.

It appears, therefore, that the decree of the supreme court by which the general validity of the claims in those cases was ascertained, and by which directions for a survey of certain tracts were given, were not only regarded by the court, but in terms declared. to be final decrees; although some proceedings subsequent to and in execution of the mandates were required to be had by the inferior court and by the surveyor, the latter of whom, it may be remarked, was, by the sixth section of the act of 1824, required to make a survey after a final decision in favor of a claimant. That the decrees under which the surveyor, by the act of 1851, was required to survey, were not by the legislature intended to contain or embody a precise

description of the land, as ascertained by a previous survey, is further evident from the fact that the same section confers upon the surveyor general a certain provisional and quasi judicial authority to fix and settle disputed boundaries between adjoining ranchos. But if the final decree of this court, under and in obedience to which he acts, has already fixed with precision every line of the claim which is confirmed, the surveyor can never exercise the authority which the lawmakers have been at pains to confer. It would seem clear that the statute contemplated that the claim might be finally confirmed, and the surveyor called upon to survey it, under a decree affirming its validity and fixing its general boundaries, or those of the tract out of which the quantity confirmed should be taken, thus leaving to the surveyor the, opportunity to exercise the authority with respect to interfering claims or boundaries which the lawmakers intrusted to him.

On the whole, I incline to the opinion that the decision of the supreme court ought not to be construed as determining that none of the decrees heretofore rendered by the boards, the district courts, and by itself, are final decrees; and that final decrees, defining with precision the boundaries of the land, must in all cases be entered. I am aware that this view is apparently in conflict with some expressions in the opinion, but it has seemed less open to objections than the other construction suggested, to adopt which would involve as consequences: (1) That no final decree has ever yet been made in any land case. (2) That the survey is to be made by the surveyor general of claims not finally confirmed, but which are finally confirmed only after survey, when the language of the statute is express, that the claims to be surveyed by him are those which shall be "finally confirmed." (3) It would leave the regularity and even the validity of all patents heretofore issued open to grave doubts. (4) It requires us to suppose that the supreme court have treated as final, and therefore appealable, decrees which were not final, and this by a relaxation of their rules, which, as the law only gives to that court jurisdiction of appeals from final decrees, it cannot be supposed that they would have felt themselves at liberty to make.

Assuming, then, that the decrees of this court, heretofore rendered, are to be deemed "final" in such a sense as that an appeal from them can be taken, and that the surveyor general, under the thirteenth section of the act of 1851, may be required to survey them, we are next to inquire what further jurisdiction over the case this court is, by the opinion under examination, declared to possess. That the Case of Fossat was remanded in order that a survey might be made, and a decree embodying such approved survey entered, is clear. It may be said, however, that such a proceeding is merely decided to be necessary in that particular case, and that it should not be taken except in cases precisely similar to that of Fossat, viz. where the question of boundary or location has been raised and decided in the regular course of the suit, and where the supreme court has remanded the cause in order that the location might be fixed. But this interpretation of the opinion is inadmissible. It has already been shown that this court had performed every duty required of it by the previous decision of the former court, and that the cause was not remanded because this court had failed to execute the previous mandate in the case. That the supreme court have, in their opinion, laid down principles generally applicable to all cases, I think, is evident.

In the first place, they discuss and decide the point whether this court has, by the act of 1851, any authority to decide questions of extent, location, and boundary. Such questions they declare may be "essential in determining the validity of a claim," and the power to decide upon "validity" involves the power to decide upon all questions of boundary. Secondly, In answer to the objections that this court has no means to ascertain the specific boundaries of a confirmed claim, and no power to enforce the execution of its decree, the supreme court decides that this court has such power, and that it is the duty of the surveyor to fulfill the decree of the court; and the court declares "that the power of the district court over the cause does not terminate until the issue of a patent conformably to its decree."

I am aware that, in a previous opinion, delivered in the same case,—[U. S. v. Fossat] 20 How.: [61 U. S.] 425,—the same court declared that "the jurisdiction of the board of commissioners in the first instance, and the appellate jurisdiction of the courts of the United States, are limited to the making of decisions on the validity of the claim preliminary to its location and survey by the surveyor general of California, acting under the laws of the United States." No mode of reconciling this declaration with any construction of the last decision in the Case of Fossat, was suggested at the bar or has occurred to either of the judges. It must, therefore, be treated as overruled by the latter case. As, then, "the power of this court over the cause does not terminate until the issue of a patent conformably to its decree," and as it has jurisdiction to determine all questions of extent, location, and boundary which may arise, it is the duty of the court to exert this power, and to exercise the jurisdiction at the instance of a suitor. I therefore think that, in all cases where a decree of confirmation has been entered, and a survey under it has been made, on which a patent is about to issue, which survey is objected to as erroneous, it is the duty of the court to direct the survey to be returned to it, that it may hear and determine the questions of location and boundary which may be raised.

In coming to this conclusion, I have not overlooked the great difficulties of reducing it to practice. The first and most perplexing question is that of parties. By whom can objections to a survey be made? Every party entitled to object to the survey must have a right to take testimony in support of his objection, and a right to appeal from the decision of this court to the supreme court. It is therefore of the utmost consequence to determine who are the proper parties to the proceeding.

At first blush, the answer might seem obvious, viz.: That the parties to a proceeding to correct a survey, are only the original parties to the suit, viz. the United States and the claimant. But the solution of the difficulty is by no means so easy as it might appear. During the long period which has elapsed since the claims were first filed before the board, many changes of interest have occurred. Suppose, then, that the original claimant, has parted with all his interest, or it has been sold on execution. He may have no motive to dispute any location, however erroneous, and he may not be disposed to allow the use of his name to the present owner. Cannot the latter be heard to object to the location of what has become his exclusive property? Or, suppose that the original claimant, though really entitled to only two leagues, to be taken from a tract the boundaries of which contain four leagues, has, through error or fraud, sold out four leagues to two purchasers,—two leagues to each. He, therefore, has ceased to have any interest in the controversy. The real contest is between the purchasers, each of whom desires that the patent may cover the land conveyed to himself. Is neither to be heard? Or only he who has the good fortune to obtain the use of the name of the original claimant? The United States may have no objection to the survey. It will, therefore, be confirmed, unless objected to on the part of the claimant. Which of the parties, in the case supposed, has the right to object? If both have, what limits can be assigned to the rights of intervention? For, in some cases, the grantee may have sold to hundreds of purchasers.

Again: If the right of both subgrantees to be heard in the case supposed be admitted, ought not persons so immediately interested in the result of the inquiry to be heard, notwithstanding that the original claimant may not have sold out his entire interest? The part retained by him may be so situated that any possible location of the claim will include it. He has, therefore, no interest to object; on the contrary, he desires a patent to issue without delay. But the purchasers under him have a direct and vital interest in obtaining a location such as will cover the tracts conveyed to them respectively. Is the court to refuse to hear them?

Again: Grants, in most instances, have, as one or more of their boundaries, the lands of other parties. The court, in fixing the location of Rancho A, necessarily determines one of the boundaries of Rancho B, by which it is bounded. Ought not the owner of the latter to be heard to show what his boundary is? If he is not, he is excluded on the ground that the suit as to the boundaries of his neighbor determines nothing as to his rights. The result might thus be that, when the second rancho is before the court for location, the evidence in that case would compel it to adopt a boundary line different from that fixed in the first case. If the second location were the correct one, the claimant in the first case would lose his land. It would then be too late to extend his lines in another direction so as to give him the quantity mentioned in his grant. But the boundaries of Rancho B, in the case supposed, may involve an inquiry into the true location and boundaries of Rancho C, and several other circumjacent tracts. How, then, can the court, hearing each case separately, unassisted by topographical maps, and unable, except in rare instances, to visit the lands, hope to arrive at any satisfactory conclusion?

Again: Two or more grants are often made within the same general boundaries—an original, or first grant, and one or more sobrante grants. Ought not both grantees to be heard, that the court may, if possible, locate each of the grants, so as to satisfy the just claims of all the grantees? If all these parties have the right to appear, take testimony, and to appeal, it may reasonably be apprehended that the litigation upon which we are entering will be far more protracted than that which has already occurred respecting the validity of the claims. If these parties are excluded, how can justice be done? When we consider the immense interests involved in the location of grants, the vague and indeterminate character of the boundaries mentioned in the grants and delineated in the diseños, the opportunity afforded for plausible objections to any location which can be made, and how impracticable it is for a court to learn, through depositions, the natural features of a country it has never seen, and of which no topographical map is exhibited, and therefore how difficult it will be for it to render any decision in which the parties will acquiesce, or which will be satisfactory to itself, it may well be doubted whether the evident anticipation of the supreme court that few cases will reappear before it on appeal will be realized.

Before dismissing this subject a further observation may be made. The settlers claiming to hold under the United States are heard, if at all, through the district attorney. In many cases they may have just objections to a location which has been made so as to improperly include their claims. In many cases they may object to any location in order that the issue of a patent may be postponed, and that they may continue to enjoy

the use of the land. The number of locations to be passed upon may be some hundreds. The district attorney, like the court, is unacquainted with the topography of the country. How can he determine, when objections supported by affidavits are presented to him, which he ought to urge in the name of the United States, and which he ought to refuse to make, as vexatious and intended for delay? May he not be driven to adopt the rule to make objections which seem plausible and are supported by an appearance of proofs? In such case, it is to be feared that the jurisdiction the court is about to exercise may be as often the means of delaying indefinitely the issue of a patent to a rightful claimant, and of plunging him into a new and protracted litigation, as of correcting errors of the surveyor general in locating claims. For these reasons I would gladly have declined the jurisdiction I am urged to assume. Under the recent decision of the supreme court I have not felt at liberty to do so.

With regard to the particular case more immediately under consideration, it follows, from what has been said, that this court cannot now proceed to examine the survey which has been made. The court, as already stated, regards the decree heretofore made as final, in a sense to authorize an appeal from it, or a survey of the lands as finally confirmed. It is not, however, exhaustive of its power over the case, for that does not terminate until the issue of a patent. The court does not, therefore, proceed, as of course, to enter a decree for the land as surveyed, which would be necessary if the decree heretofore made were only interlocutory. But it will hear objections to the survey. None are made in this case. The survey originally made is satisfactory to the parties now moving to bring it before the court. That survey has been disapproved at Washington by the executive officers of the government, and a new one directed to be made. When that shall have been done, the parties now moving may make their objections, and bring the questions involved before the court.

NOTE. Since the foregoing decision was rendered, Judge Hoffman has decided (in the case of U. S. v. Bidwell [Case No. 14,592], claiming the Rancho Arroyo Chico) upon the rights of settlers with respect to their standing in court. Judge Hoffman says: "In this case, as in all other cases, all persons who allege that any of the land included in a survey of a rancho is public land of the United States, must urge their objections in the name of the United States, and through the district attorney. To that officer is committed the duty of seeing that no public land is improperly embraced within a survey of a private claim. When he has no objections to interpose, the settler cannot be permitted to intervene in the proceeding. When he settled upon that land, and, notwithstanding that it was claimed under a Mexican title, chose to assume it to be public land, he was aware that the United States would assert her rights through her proper officers, and that the judgment of the courts, declaring that the land was not public but private land, would be final and conclusive

on the rights of the United States and all claiming under them. When, therefore, the United States, through her officers, admits that the survey is properly made, or declines to make objections to it, no settler can be heard to contest it."

[For subsequent hearing upon the new survey ordered to be made, see Case No. 15,125. At a still later date the survey of 1857 was finally approved. Id. 15,126.]