SALVADOR CASTRO, APPELLANT, *v.* THOMAS A. HENDRICKS, COMMISSIONER OF THE GENERAL LAND OFFICE.

Where there were two separate claimants of land in California, both claiming under one original grant, and the surveyor, in running out their lines, disregarded the limits of the original grant, and included within one of the surveys a large portion of Government land, the Commissioner of the General Land Office was right in refusing to issue a patent founded on such erroneous survey.

THIS was an appeal from the Circuit Court of the United States for the District of Columbia.

It was a petition to the Circuit Court for a mandamus to Hendricks, commanding him to prepare a patent for some land in California; secondly, to cause said patent, when ready for the requisite signatures of the appropriate officers, to be presented to the recorder of the land office and the President of the United States, or other proper officers of the Government, for their respective signatures; thirdly, to deliver the patent so prepared and duly subscribed to the petitioner.

A rule was laid upon the Commissioner to show cause why a mandamus should not issue as prayed. On the 10th of June, 1858, he filed his answer and exhibits. Whereupon the court adjudged that the cause shown was sufficient, and dismissed the petition. The petitioner appealed to this court.

In 1839, there was a grant of land to Antonio Buelna, of the extent of four square leagues, a little more or less. In 1849, the widow of Buelna and her then husband sold to Castro one league of land in the location known by the name of San Gregorio, situated on the coast to the north of Santa Cruz, and which land, consisting of four leagues, was the property of Antonio Buelna.

In 1852, another deed was made for more definite boundaries, which contained certain courses and distances. Three leagues of this land were confirmed to the widow of Buelna, (then Madame Rodrigues,) and surveyed for her, giving her that quantity. About this there was no controversy.

Castro petitioned for his confirmation, and in January, 1856, the District Court decreed in his favor, referring to the description substantially the same as that contained in the second deed, above mentioned, adding these words: "The tract hereby confirmed, containing by estimation one square league, and being the same land described in the conveyance to claimant, filed before said board, and constituting a part of the record in this cause."

After the confirmation, a survey was made on behalf of the petitioner, under the authority of the surveyor general of California, who signed it on the 19th of November, 1857. Being approved by him, it was returned to the General Land Office.

The Commissioner examined the survey in connection with the grant to Buelna, the two deeds, and the decree of confirmation, and came to the conclusion that the lines of the survey ran out of the grant to Buelna into the Government land, and gave to Castro two leagues and a half more land than he ought to have, the surplus being taken from the lands of the United States.

On the 3d of February, 1858, the Commissioner signed, with a view to transmission, instructions to the surveyor general to the effect that he should cause a further and careful examination to be made in the whole matter, and report the result, with his decision as to the true boundaries of the league confirmed to Castro, and the three leagues to Madame Rodrigues.

The petitioner appealed to the Secretary of the Interior, who affirmed the decision of the Commissioner of the Land Office, who refused to issue a patent founded upon what he considered to be an erroneous survey.

In May, 1858, the petitioner applied to the Circuit Court for a mandamus, as before stated.

The case was argued in this court by *Mr. Hepburn*, upon a brief filed by himself and *Mr. Brent*, for the appellant, and by *Mr. Black* (Attorney General) for the appellee.

Mr. Justice CAMPBELL delivered the opinion of the court.

The appellant petitioned the Circuit Court for a writ of mandamus, to be directed to the Hon. Thomas A. Hendricks, Commissioner of the Land Office, commanding him to prepare and provide a patent to the appellant for a parcel of land in California, which had been confirmed to him by the decree of the District Court for the northern district of California, and is described in a survey approved by the surveyor general of that State.

It appears from the petition and answer, and the papers filed in the Circuit Court, and forming a part of the record, that in the year 1839 the Governor of California granted to Antonio Buelna a tract of land known as San Gregorio, of the extent of four square leagues, a little more or less, as is shown in the sketch attached to the expediente. In 1849, the representatives of Buelna (his widow and her husband) sold to the appellant one league of land in the location of San Gregorio; and in 1852 they executed a deed, conveying the same land, by the description of one league of land, in the place known by the name of San Gregorio, on the coast north of Santa Cruz, being part of a tract of land of four leagues, granted by the Government to Antonio Buelna, and the same is declared to be situate and bounded as follows, and containing one league, more or less: commencing at a stake marked A, in the Canada de los Tunis, where the Arroyo de los Tunis comes out of the mountains; thence running southerly with the ridge of the mountains to the stake marked B, in the Arroyo

Hondo; thence following said Arroyo Hondo until it meets the Arroyo de San Gregorio; thence, following the Arroyo de San Gregorio, to a stake marked C on a white rock in the mountain, situate on the west side of said arroyo; thence northwardly, about two miles, to a high conical peak of the mountain, on which is placed stake marked D; thence easterly to the place of beginning.

Separate claims were presented by the widow of Buelna and Salvador Castro for their respective portions of the rancho San Gregorio, and separate decrees of confirmation were made in the District Court. The decree in favor of Madame Buelna is for three square leagues of the land within the boundaries described in the plan attached to the expediente, and referred to in the original grant, copies of which are on file in the cause. Salvador Castro was confirmed to the tract of land described in the deed by the metes and bounds before mentioned, with the addition, "being portion of the four leagues granted April 16, 1839, by J. B. Alvarado to Antonio Buelna, and known as San Gregorio, the tract hereby confirmed containing, by estimate, one square league, and being the same land described in the conveyance to the claimant." The two decrees were communicated to the surveyor general of California in 1857, and his returns are filed as testimony in the cause. He has laid off to Madame Buelna the three square leagues confirmed to her, and has surveyed for the appellant a tract within the specific calls of the deed and decree of fifteen thousand seven hundred and 54-100 acres. It is apparent, from this statement, that the surveyor general has entirely disregarded the limits of the rancho San Gregorio, and the restrictions as to quantity in the grant of Alvarado, Governor of California, of April, 1839. But these, for the object before the court, were the controlling calls in the deed, as well as in the decree. The primary object of the act, "To ascertain and settle the private land claims in the State of California," approved 3d March, 1851, was to distinguish the vacant and public lands from those that were private property; and for this purpose, an inquiry into pre-existing titles became necessary. To accomplish this, every person claiming lands

in California, by virtue of any right or title derived from the Spanish or Mexican Government, was required to present the same to a board of commissioners. The mesne conveyances were also required, but not for any aim of submitting their operation and validity to the board, but simply to enable the board to determine if there was a bona fide claimant before it under a Mexican grant; and so this court have repeatedly declared that the Government had no interest in the contests between persons claiming ex post facto the grant. United States *v.* Sutter, 21 How. S. C. R., 170.

The authentic evidence of what is private property is to be found in the grants of the Government of California, and not in the mesne conveyances. Nor is this Government charged to decide between claimants in the condition of those interested in the rancho San Gregorio. It was entirely competent for the District Court to connect the claims arising under the same grant, and it will be its duty, in superintending the execution of the decrees of that court in such cases, to look to the evidence furnished by the grant itself as overruling in determining questions of boundary and location.

In the case of the United States *v.* Fossatt, 21 How., 445, this court had occasion to refer to the limits of the authority of the courts of the United States under the act of the 3d March, 1851, before cited. We stated in that case, that if questions of a judicial nature arose in the settlement of the location and boundary of the grants confirmed to individuals, the District Court was empowered to settle those questions upon a proper case being submitted to it before the issue of the patent; and in such a case, the judgment may properly extend to the confirmation of the survey, and an order for a patent to issue. But it was not the expectation of this court that the surveyor general should make returns to the District Court in every case, nor did they imply that the validity of a survey depended on the recognition of that court, or its incorporation into a decree of the court. The surveyor general of California was charged with the duty to cause all private claims which shall be finally confirmed to be accurately surveyed, and to furnish plats for the same; and in the location

of the said claims, he was invested with such power and authority as are conferred on the register of the land office and receiver of the public moneys of Louisiana, in the sixth section of the "Act to create the office of surveyor of the public lands for the State of Louisiana," approved 3d March, 1831. 4 Statutes at Large, 492. Under this act, the surveyor general exercises a quasi judicial power; and the claimant, with an authentic certificate of the decree of confirmation, and a plat or survey of the land, duly certified and approved by the surveyor general, is entitled to a patent. But, then, the Commissioner of the Land Office, by virtue of enabling acts of Congress, exercises a supervision and control over the acts of the subordinate officers charged with making surveys; and it is his duty to see that the location and survey made by that officer under the decree of the court, and which has not had the final sanction of the judicial tribunals, is in accordance with the decree. The refusal of the Commissioner of the Land Office to issue a patent upon this survey was an appropriate exercise of the functions of his office, and the decree of the Circuit Court refusing a mandamus is affirmed with costs.