THOMAS WILSON *et als.* v. SALVADOR CASTRO *et als.*

PARTIES IN EQUITY.—All persons materially interested either legally or beneficially in the subject matter of a suit in equity, which may be affected by the decree, ought to be made parties, so that there may be a complete decree, which shall bind them all and prevent future litigation.

IDEM.—The above rule is one somewhat of convenience, and will not be rigidly

enforced when its observance would be attended with great inconvenience and answer no substantially beneficial purpose.

MULTIFARIOUSNESS OF BILL IN EQUITY.—A bill in equity is multifarious when several matters are united against one defendant which are perfectly distinct and unconnected, or when relief is demanded against several defendants of several matters of a distinct and independent nature.

IDEM.—A bill in equity is not multifarious if there is a common liability in the defendants and a common interest in the plaintiffs, or if the interests of the plaintiffs are the same, and the defendants have not a coextensive common interest, but their interests are acquired under different instruments from the same source of title.

IDEM.—If a bill in equity to enforce a trust avers that plaintiffs' grantors inherited a tract of land as heirs at law of their brother, who received a grant of the same from the Government of Mexico, and died intestate, and that two of the defendants afterwards received patents for distinct parcels of the same, and that the several other defendants claim the title to separate and distinct parcels of the same derived from the patentees, and that the defendants hold the legal title to the several distinct parcels in trust for the plaintiffs, it is not multifarious.

SEPARATE ESTATE OF HUSBAND.—Under the Spanish and Mexican law, land granted by the Government to the husband as a donation, became his separate estate, and passed, upon his dying intestate, to his heirs at law.

TRUST ESTATE.—If one who has a grant of land from the Government of Mexico dies intestate, and then a person, mistakenly believing himself the heir, sells a part of the land to another, who afterwards, under the belief that he has acquired a good title, and without any fraud obtains a confirmation of the grant and a patent from the United States, the patent does not deprive the heirs at law of their interest in the property, but the patentee holds the legal title in trust for the true heirs.

IDEM.—If after the death of a person owning land granted him by the Mexican Government, one mistakenly believing himself the heir, obtains a confirmation of the grant to him and a patent therefor, without any fraud, the patentee holds the legal title thus obtained in trust for the true heir.

IDEM.—It matters not in such cases whether the respective patentees acted in good faith and did not know that they occupied to the heirs at law the relation of trustees in equity, for the trust arises as matter of law, and is a constructive trust.

IDEM.—The respective patentees in such cases are presumed as matter of law to have notice of the rights of the true heirs, and that they hold the legal title of the land in trust for them.

IDEM.—The fact that the true heirs in such case had notice of the proceedings taken by the respective patentees to obtain confirmations of the grant and patents for the same from the United States, but did not intervene to protect their rights, does not destroy the trust.

IDEM.—The fact that the true heirs in such case were silent during the proceedings for confirmations and obtaining patents, does not estop them from asserting their equitable right to the land and enforcing the trust.

APPEAL from the District Court, Twelfth Judicial District, City and County of San Francisco.

The plaintiffs appealed.

The other facts are stated in the opinion of the Court.

*S. F. & J. Reynolds,* for Appellants, argued that as Buelna .died seized of the entire ranch, and the plaintiffs were his sole heirs and inherited the entire property, and as the widow and all the other defendants asserted a right to what they claimed as their respective interests in the property under the grant to Buelna, that they were properly joined as defendants under the rule in equity that all persons claiming an interest in the property or matter in litigation should be brought into Court, to have their rights determined; and cited 2 Story's Eq., Sec. 1,526; Cooper's Eq. Pl., Ch. I, p. 34; and Mittford's Eq. 163, 164; and that there was no misjoinder of action, because all the defendants claimed through Mrs. Valencia. They also argued, that in order to create a trust it was not necessary that the patents should have been procured fraudulently, or with any intent on the part of the patentees to defraud the heirs; and cited *Estrada* v. *Murphy,* 19 Cal. 272; and *Castro* v. *Hendricks,* 23 How. 441; and that it was not necessary that any of the defendants have notice of the rights of the heirs at law, as the rights of the heirs must have appeared on the petition for confirmation; and cited 15 Peters, 110.

*John W. Dwinelle,* and *Henry Wilkins,* for Respondents, argued that there was a misjoinder of defendants, because the complaint averred that three leagues were patented to Maria Encarnacion Valencia, and one league to Castro, and did not aver that all the defendants claimed under both patents, but only that they claimed some interest in the four leagues, and that it followed that those who were alleged to be trustees under the Castro patent, had no community of interest with those who were alleged to be trustees under the Valencia patent; and cited Story's Eq. Pl., Secs. 271, 272; *Brinkerhoof* v. *Brown,* 6 Johns. Ch. 139; *Fellows* v. *Fellows,* 4 Cow. 682; and that the complaint did not aver a cause of action, as it did not show that the patents were fraudulently obtained, or were obtained without the tacit consent of the heirs, or that the heirs did not know of the proceedings under which the

confirmations were made and patents were obtained ; and cited *Strother* v. *Lucas*, 6 Peters, 770 ; Id. 12 Peters, 452 ; *Bissell* v. *Penmore*, 8 How. U. S. 338 ; and *Lander* v. *Brant*, 10 How. U. S. 370.

By the Court, CURREY, C. J.:

The complaint in this suit shows that in May, 1839, there was granted by Juan B. Alvarado, the Governor of Upper California, to Antonio Buelna, a citizen of Mexico, four square leagues of land in the place called San Gregorio.   The grant was made under the Mexican Colonization Law of 1824 and the regulations of 1828, subject to the approval of the Departmental Assembly.   To it were annexed the usual conditions, one of which required the grantee to apply to the proper officer of the jurisdiction to cause the four leagues to be measured and set apart to him, and further declared that what should remain of the general area described by the *deseño* or map which was attached to the *expediente* in the case should be reserved to the nation for its convenient uses.   The grant being made, Buelna entered into the possesssion of the land described, which was thereafter known as the San Gregorio Rancho, and he thence continued in possession as long as he lived.   Buelna died in 1845, intestate, leaving him surviving his widow, Maria Encarnacion Valencia, one of the defendants and a brother and a sister, but no lineal descendants.   The plaintiffs allege that this brother and sister were the decedent's only heirs at law, and that upon his demise they succeeded by inheritance to the ownership of the rancho.

After the death of Buelna, his widow continued in possession of the property, holding and using it, the plaintiffs say, for said heirs at law of the intestate, until 1852.   Some time prior to 1849 the said Maria Encarnacion Valencia was married to the defendant, Francisco Rodriguez, and in January of the year last named she and her husband executed to the defendant, Salvador Castro, a deed or instrument in writing purporting to convey to him one separate league of said

rancho. After the Board of Commissioners appointed under
the Act of Congress passed in March, 1851, entitled "an Act
to ascertain and settle the private land claims in the State of
California," was organized, Castro presented his petition to
said Board for the confirmation of his claim to the league so
attempted to be granted to him ; and Mrs. Rodriguez pre-
sented her petition to the same Board for the confirmation to
her of the remaining three leagues. The claims of the respec-
tive petitioners were founded on .the grant made to Antonio
Buelna, and were finally confirmed and patents therefor were
issued to the petitioners respectively, by the Government of
the United States, in February, 1861.

The plaintiffs say they are informed and believe, and upon
such information and belief they charge that immediately
upon the death of Antonio Buelna his widow took charge of
the title papers and written evidence of the grant and kept
the same in her possession until they were presented to the
Board of Commissioners, and kept from the heirs at law all
knowledge of such grant, for the purpose and with the intent
of using the same to acquire the legal title to said rancho for
herself and her pretended grantee, and in fraud of the rights
and legal claims of said heirs at law.

The plaintiffs allege that they have derived by proper deeds
of conveyance all the estate, right, title and interest in the
land which descended upon the death of Antonio Buelna to
his brother and sister, and that at the time said Castro and
Mrs. Rodriguez respectively presented their petitions to the
Board of Commissioners, and at the time the patents were
issued, the petitioners had no right, title, estate or claim in or
to the lands of the rancho or any part thereof, and that all the
acts and proceedings instituted and had in their respective
names for the confirmation of the title submitted to the Board
of Commissioners were for the use and benefit of said heirs at
law and their successors in interest, and that the title and
estate which became vested in the respective patentees by the
confirmations and patents they have since held in trust for

and as the trustees of the plaintiffs, and the same are in duty bound to transfer and convey to the plaintiffs.

The defendants other than those above named, the plaintiffs say they are informed and believe, and upon such information and belief charge as claiming " to have and hold some right, title or interest in and to the lands of said rancho by or through the said Maria Encarnacion Valencia and her said husband and the said Castro, or one or more of them, or by or through some person or persons claiming to hold under the said last mentioned defendants," but they say what is the amount of such right, title or interest, or the part or portion of said lands, or the nature, character or extent of the interest or claim of such other defendants, is unknown to the plaintiffs and that they are unable to set forth the same, but they insist that whatever the same may be, it was taken and received by them and each of them with knowledge that neither Maria Encarnacion Valencia and her husband, nor said Castro, nor either of them, had any right, title, interest or estate of any kind whatever in the lands of said rancho, nor the right or power to convey or dispose of the same or any part thereof; and that whatever right, title or interest was transferred to such other defendants, they received in trust for and as trustees of the heirs at law of Antonio Buelna and their successors in interest, and so held the same in trust; and as such trustees were bound to convey the same to the plaintiffs, and they ask for a decree compelling the defendants to convey the same to the plaintiffs; and they pray, also, for such other or further relief in the premises as the nature of the case may require, etc.

The defendants demurred to the complaint and assigned the following causes of demurrer:

First—That there is a misjoinder of defendants.

·Second—That several causes of action have been improperly united.

Third—That the complaint does not state facts sufficient to constitute a cause of action.

54

Fourth—That the complaint is uncertain.

The demurrer was sustained with leave to the plaintiffs to amend their complaint. The plaintiffs did not avail themselves of the leave granted, and thereupon their complaint was dismissed and judgment final entered for the defendants.

### *Parties to suit in equity.*

I. The objections interposed by the demurrer because of the misjoinder of parties defendants, and because of the improperly uniting of several causes of action, were distinctly specified under the general assignment of these causes of demurrer; and as the consideration of the one necessarily involves that of the other, they will be treated of together.

The complaint shows that the defendant Castro presented to the Board of Commissioners appointed under the Act of Congress referred to, for confirmation, his claim to the entirety of one particular league of said rancho, and that his claim thereto was confirmed and a patent issued to him therefor. The complaint also shows that the defendant Maria Encarnacion Valencia presented to the same Board of Commissioners for confirmation her claim to the entirety of the other three leagues of the same rancho, and that her claim thereto was confirmed and a patent issued to her therefor. And the complaint further shows by a general averment that the defendants other than Castro and Maria Encarnion Valencia and her husband claim to derive whatever interest they may have in the property from the three first named defendants, or some one or more of them. It does not appear from the complaint that all the defendants claim to hold under both of these patents, but it does appear that whatever right, interest or estate they, or any of them, may have and hold rests upon the grant made to Antonio Buelna; and the solution of the question raised by demurrer must in order to support the complaint be found in the fact that all the defendants hold in a subordinate relation to the original right and title as it descended from the intestate to his heirs at law.

Who are the proper and necessary parties to a suit in equity

is a subject of great practical importance, and oftentimes of no inconsiderable difficulty. It is the constant aim of a Court of equity to do complete justice by deciding upon and settling the rights of all parties interested in the subject of the suit, so as to make the performance of the decree of the Court perfectly safe to those compelled to obey it, and to prevent further litigation. For this purpose all persons materially interested, either legally or beneficially in the subject matter of the suit, ought generally to be made parties thereto, either as plaintiffs or defendants, so that there may be a complete decree which shall bind them all. (Mitford's Plead., 6th Am. Ed. 189; 1 Daniell's Ch. Plead and Prac. 40; Story's Eq. Plead., Sec. 72; *People* v. *Morrill*, 26 Cal. 360, 361.) The rule as stated and illustrated in *King* v. *Berry's Executors*, 2 Greene's Ch. R. 52, is, that all persons legally or beneficially interested in the subject matter and result of a suit must be parties; and to the same effect are the following cases: *The Mechanics' Bank* v. *Seton*, 1 Peters, 306; *Caldwell* v. *Taggart*, 4 Id. 190; *Marshall* v. *Beverley*, 5 Wheat, 313; *Conn.* v. *Penn.*, 5 Id. 424; *Williams* v. *Russell*, 19 Pick. 165; to which many others might be added. But to this general rule there are, according to the authorities, exceptions. (Mit. Plead. 190; Story's Eq. Plead., Secs. 76, 76 *a*, 76 *b*, 76 *c*; *Wiser* v. *Blackly*, 1 John. Ch. R. 43.) These it is not necessary to notice in this place, as no question is presented requiring it. There is a distinction made in some of the authorities between subject matter of the suit and object of the suit, and it has been said that it is not all persons who have an interest in the subject matter of the suit, but in general those only who have an interest in the object of the suit who are ordinarily required to be made parties. (Calvert on Parties, 5, 6, 10, 11.) The general rule on the subject may be stated to be that all are necessary parties who have an interest in the subject matter which may be affected by the decree. (*Smith* v. *The Trenton Delaware Falls Company*, 3 Green's Ch. R. 508; *Crease* v. *Babcock*, 10 Met. R. 531.) This rule is founded in the principle of preventing future litigation and avoiding a multiplicity

of suits by adjudicating upon the rights of all parties upon whom a decree may or ought to operate. But this rule requiring all in interest to be before the Court is one somewhat of convenience, and will not be rigidly enforced where its observance would be attended with great inconvenience and answer no substantially beneficial purpose. It will be modified or partially dispensed with, in the discretion of the Court, as justice and the exigencies of the case may require. Having thus referred generally to the rule of Courts of equity in relation to what persons ought to be made parties to a suit, we shall proceed directly to the consideration of the question in issue—that is to say, the objection that there is a misjoinder of parties defendants, and an improper union of causes of action, or in other words, that the complaint is fatally infected with the vice of multifariousness.

A bill in equity is said to be multifarious when distinct and independent matters are joined therein—as, for example, the uniting of several matters perfectly distinct and unconnected against one defendant, or the demand of several matters of a distinct and independent nature against several defendants. But the case of each particular defendant must be entirely distinct and independent from that of the other defendants, or the objection cannot prevail; for, as said by Judge Story, " the case of one may be so entire as to be incapable of being prosecuted in several suits, and yet some other defendant may be a necessary party to some portion only of the case stated. In the latter case, the objection of multifariousness could not be allowed to prevail. So it is not indispensable that all the parties should have an interest in all the matters contained in the suit; it will be sufficient if each party has an interest in some matters in the suit, and they are connected with the others." (Story's Eq. Plead., Secs. 271, 271 a.) The same authority lays it down that " to support the objection of multifariousness, because the bill contains different causes of suit against the same person, two things must concur : First, the different grounds of suit must be wholly distinct ; secondly, each ground must be sufficient as stated, to sustain a bill ; if

the grounds be not entirely distinct and unconnected; if they arise out of one and the same transaction, or series of transactions, forming one course of dealing, and all tending to one end; if one connected story can be told of the whole, the objection does not apply." (Sec. 271 *b*.) When the point in issue is a matter of common interest among all the parties to the suit, though the interests of the several defendants are otherwise unconnected, still they may be joined. In *Salvidge* v. *Hyde*, 5 Madd. R. 138, Sir John Leach, Vice-Chancellor, said: " If the objects of the suit be single, but it happens that different persons have separate interests in distinct questions which arise out of the single object, it necessarily follows that such different persons must be brought before the Court, in order that the suit may conclude the whole subject." In *Boyd* v. *Hoyt*, 5 Paige, 78, Mr. Chancellor Walworth laid down the same doctrine in substantially the language used by Sir John Leach in *Salvidge* v. *Hyde;* and Mr. Daniell, in the first volume of his excellent work on pleading and practice in the High Court of Chancery, at page 386, says in reference to the doctrine held in *Salvidge* v. *Hyde*, there is no doubt that the learned Judge stated the principle correctly, though in the application of it he went, in the opinion of Lord Eldon, too far. (1 Jac. R. 151.) In *Whaley* v. *Dawson*, 2 Sch. and Lef. 370, Lord Redesdale observed that in the English cases where demurrers, because the plaintiff demanded in his bill matters of distinct natures against several defendants not connected in interest, have been overruled, there has been a general right in the plaintiff covering the whole case, although the rights of the defendants may have been distinct. In such cases the Court proceeds on the ground of preventing multiplicity of suits, when one general right is claimed by the plaintiff against all the defendants; and so in *Dimmock* v. *Bixby*, 20 Pick. 368, the Court held that where one general right is claimed by the plaintiff, although the defendants may have separate and distinct rights, the bill of complaint is not multifarious. In the elaborate case of *Campbell* v. *Mackay*, 1 Myl. & Craig, 603, Lord Cottenham held that where the plain-

tiffs have a common interest against all the defendants in a suit as to one or more of the questions raised by it, so as to make them all necessary parties for the purpose of enforcing that common interest, the circumstance of the defendant being subject to distinct liabilities, in respect to different branches of the subject matter, will not render the bill multifarious. In the same case his Lordship observed that it was utterly impossible, upon the authorities, to lay down any rule or abstract proposition as to what constitutes multifariousness which can be made universally applicable. The only way, he said, of reconciling the authorities upon the subject is, by adverting to the fact that although the books speak generally of demurrers for multifariousness, yet, in truth, such demurrers may be divided into two kinds, one of which, properly speaking, is on account of a misjoinder of causes of action; that is to say, uniting claims of so different a character that the Court will not permit them to be litigated in one record even though the plaintiff and defendants may be parties to the whole transactions which form the subject of the suit. The other of which, as applied to a bill, is that a party is brought as a defendant upon a record with a large portion of which, and with the case made by it, he has no connection whatever. A demurrer for such cause is an objection that the complaint sets forth matters which are multifarious, and the real cause of objection is, as illustrated by the old form of demurrer, that it puts the parties to great and useless expense—an objection which has no application in a case of mere misjoinder of parties. Upon this subject Judge Story says: "In the former class of cases, where there is a joinder of distinct claims between the same parties, it has never been held as a distinct proposition that they cannot be united, and that the bill is of course demurrable for that cause alone, notwithstanding the claims are of a similar nature, involving similar principles and results, and may, therefore, without inconvenience, be heard and adjudged together. If that proposition were to be established and carried to its full extent, it would go to prevent the uniting of several instruments in one bill, although the

parties were liable in respect to each, and the same parties were interested in the property which was the subject of each;" and after giving an example in illustration of the inconvenience of an opposite doctrine, he continues: "Such a rule, if established in equity, would be very mischievous and oppressive in practice, and no possible advantage could be gained by it. It would lead to a multiplication of suits in cases where it could answer no assignable purpose but to have the subject matter split into a variety of separate bills;" and further he denies that such a rule has been established, but says, on the contrary, a different doctrine has been maintained, which is supported by the most satisfactory authority, (Story's Eq. Pl., Secs. 531, 532;) and he states in conclusion the result of the principles of the cases on the subject to be, that where there is a common liability in the defendants, and a common interest in the plaintiffs, different claims to property, at least if the subjects are such as may without inconvenience be joined, may be united in one and the same suit; and further, that where the interests of the plaintiffs are the same, although the defendants may not have a coextensive common interest, but their interests may be derived under different instruments, if the general objects of the bill will be promoted by their being united in a single suit, the Court will not hesitate to sustain the bill against all of them. (Ibid, Secs. 533, 534.)

The subject matter of the suit in this case is the property alleged to be held by the defendants as trustees for the plaintiffs—the successors in interest of the heirs at law of Antonio Buelna; and the object of the suit is to obtain, through the aid of the Court, the legal title to the lands of the entire rancho, which the defendants so hold in trust to and for the plaintiffs' use and benefit, in separate and distinct portions. Assuming that the plaintiffs have any right in the premises, that right is common and general to them all, covering the whole case, and notwithstanding the rights of the defendants may be distinct, so far as the same may apply to the subject matter, they may be joined in the same suit, according to the

authorities above referred to. The real issues tendered by the complaint are, Did Antonio Buelna have a property interest in the lands of the rancho, which, upon his death, descended to his brother and sister, and which was afterwards acquired by the plaintiffs? And do the defendants hold the legal title thereto in trust for the plaintiffs? From the facts stated in the complaint, which stand confessed by the demurrer, these questions appear to be common to all the parties, as upon them the plaintiffs' right to a decree in their favor primarily depends, and though the uniting of the defendants in the same suit may possibly be attended with some inconvenience to them, the evil is more than compensated by a decision of the whole controversy in one suit, and thus avoiding a multiplicity of them. There need be no difficulty in disposing of all these matters in one action. The power of the Court to adapt its decree to the various equities of the case as they may be established by the proofs, enables it advantageously to settle and adjust in a single suit the rights and interests of all the parties, centering, as they do mainly, in the question of the right to the inheritance which passed upon the death of Antonio Buelna to whomsoever were his heirs at law. From a careful examination of the authorities, we have come to the conclusion that the demurrer for a misjoinder of parties defendants, and also for improperly uniting several causes of action in the suit, ought to have been overruled.

II. In the second place it is objected by the demurrer that the complaint does not state facts sufficient to constitute a cause of action, because:

First—It does not state any facts from which it may be lawfully inferred that either of the patents was procured fraudulently or was ever held in trust for the plaintiffs or the persons from whom the plaintiffs claim to have derived the title to the property; but merely alleges those matters as a conclusion of law.

#### Notice of trust.

Second—It does not show that the plaintiffs or the persons

from whom their pretended title is derived had not notice of the proceedings by which Castro and Maria Encarnacion Valencia (Mrs. Rodriguez) respectively obtained a confirmation and patent for the lands to them respectively confirmed and patented; and had not an opportunity to intervene for the protection of their alleged interests, and also to institute proceedings in their own behalf for a confirmation and patenting of the lands to themselves.

Third—It does not allege that the grantors of such of the defendants as may have derived their interests immediately from said Castro and Maria Encarnacion Valencia, had knowledge of the alleged rights or equities of the plaintiffs or of their grantors, or were charged with notice of any such rights or equities.

In *Scott* v. *Ward*, 13 Cal. 459, it was held that a grant of the character of the one made in this case to Antonio Buelna vested in the grantee named the property described as his separate property, and that the same passed upon his death to his devisees. The subject is very fully examined in that case, which renders it unnecessary for us to consider and discuss the question in this place, as the doctrine there laid down has since its promulgation been the rule of decision, as also the rule of property in this State upon this important subject. We shall therefore regard the San Gregorio Rancho as the separate property of Antonio Buelna in his lifetime, which passed by descent, upon his dying intestate, to his heirs at law.

The complaint shows that Antonio Buelna died, leaving him surviving the said Maria Encarnacion Valencia, his widow, and the brother and sister named; that he died without any other heirs; and the plaintiffs allege that the brother and sister were, of the persons named as the survivors of the deceased, his only heirs at law—a question which the law of the country at the time of the death of the intestate must be referred to to determine. From the work by Schmidt, entitled "The Civil Law of Spain and Mexico," it appears that

55

the wife might inherit a part of the husband's estate in certain cases. When after the death of the husband the widow had not sufficient means to live with the comforts to which she had been accustomed, she was entitled to the fourth part of his estate, provided it did not exceed a certain amount. But her inheritance in such case was contingent, for if she afterwards led a scandalous life, or married again she lost it. (Tit. VIII, Ch. IV, Sec. 5.) But it is not our purpose now to enter upon an investigation respecting the law of descents as the same existed in California when Antonio Buelna died, because neither party has touched upon the question in the argument of the case. We shall assume, for the purposes of our present decision, without, however, concluding the question, that the brother and sister were the only heirs at law of the intestate, and that upon his death they succeeded to whatever right, interest or title he before then had in and to the property of said rancho.

If the widow of Buelna had no property interest in the land which she and her husband Rodriguez undertook to convey to Castro, then Castro could not, by means of the deed to him, acquire any right or interest therein. It was not necessary that he should have had actual notice of the rights and interests of the particular heirs at law mentioned in order to render invalid the conveyance made to him. He may have supposed he acquired, by the deed of his grantors, a good and valid right and title to the land attempted to be conveyed, and he may have presented his claim to it to the Land Commissioners in good faith, for a confirmation, and proceeded step by step in the prosecution of his supposed right until he obtained a patent for the land. Yet his ignorance, in fact, of the rights of the heirs at law, and of his relation to them, could not operate to deprive them of their rights and interests in the property. Mrs. Rodriguez may have been in the like predicament, and still the consequence as to the heirs at law was the same as in the case of Castro. We do not deem it necessary, nor in anywise important, that it should appear that the patents or either of them were fraudulently obtained in order to

save to the heirs at law and their successors in interest their
right to the property, the legal title to which, by reason of
the confirmations, surveys and patents, passed from the Gov-
ernment to the patentees.

But we think it is a presumption of law that Maria Encar-
nacion Valencia and Castro both had notice of the rights of
the heirs at law of the deceased, and that such presumption
arising out of the facts stated must be regarded as conclusive.
The claims of the petitioners, laid by them respectively before
the Land Commissioners for confirmation, were founded on
the grant made to Antonio Buelna, which grant and the *expe-
diente* and *diseño* appertaining to it, were matters of record,
open to the inspection of all persons concerned; and it is not
to be supposed that Mrs. Rodriguez was not aware of the
source of her former husband's right to the lands of the rancho,
and of his interest in and title thereto; nor can it be presumed
that when Castro obtained his deed from her and her husband
Rodriguez, he was not aware of the grant made to Antonio
Buelna; but the presumption is, as already stated, conclusive
that he was truly informed on the subject. The question is
not whether he saw the muniments of the right, title and
interest of Antonio Buelna to the land, but whether he was
bound in law to take notice of their existence. "It will not
do," say the Court in *Brush* v. *Ware*, 15 Peters, 111, "for a
purchaser to close his eyes to facts—facts which are open to
his investigation by the exercise of that diligence which the
law imposes." Purchasers in such cases must be presumed to
be cognizant of not only the character of the title, but also of
the proceedings upon which it rests for its foundation. No
principle is better established than that a purchaser must look
to every part of the title which is essential to its validity.
(*Brush* v. *Ware*, 15 Peters, 111.) We do not say at this
time whether a grantee of either of the patentees by deed sub-
sequent to the date of the patents would stand protected if he
purchased without actual notice of the equitable rights of the
heirs at law or their successors in interest, nor whether it
would be indispensable by pleading to charge them with such

notice, because the complaint does charge that the defendants, other than Castro and Francisco Rodriguez and his wife, had notice of such equitable rights when they obtained the interests which they respectively have and hold in the lands of the rancho.

It may be that every proceeding instituted by the respective patentees for the confirmation of their several claims was in entire good faith, and that they were not actually aware of occupying to the heirs at law or their successors in interest the relation of trustees, and yet the fact that the patentees were all the time such trustees cannot, for that reason alone, be gainsaid. They became trustees of the owners in equity of the property, and, after obtaining the legal title thereto, held the same in trust for such equitable owners, in spite of any intention or want of knowledge in fact of their real relations to such equitable owners. Such trusts are denominated in the books on the subject, " constructive trusts "—a class of trusts which depend upon conclusions of law, upon particular states of facts and circumstances, independently of contract, and often arise in cases where there was no intention to create a trust on the part of any of the parties concerned, and which, generally speaking, are imposed *in invitum*. (1 Spence Eq. Jur. 509.) On the subject of constructive trusts, Hill, in his treatise relating to trustees, says : " Whenever the circumstances of a transaction are such that the person who takes the legal estate in property cannot also enjoy the beneficial interest without necessarily violating some established principle of equity, the Court will immediately raise a constructive trust, and fasten it upon the conscience of the legal owner so as to convert him into a trustee for the parties who in equity are entitled to the beneficial enjoyment." (Hill on Trustees, 144.) The same author arranges constructive trusts into two classes : " the one where the acquisition of the legal estate is tainted with fraud, either actual or equitable ; and the other, where the trust depends upon some general equitable rule, independently of the existence of fraud." (Ibid.) In cases falling within the latter class, Courts of equity " vindicate their own

principles by means of their peculiar jurisdiction *in personam*, and convert the holder of the legal estate, though unaffected by fraud, either actual or constructive, into a trustee for the party who is entitled by the rules of equity to the beneficial interest." (Hill on Trustees, 170, 171, and 173.)

The complaint is also objected to, because it does not show that the plaintiffs or the persons from whom they claim to derive right to the property were without notice of the proceedings taken by the respective patentees to obtain confirmations and patents for portions of the rancho, which together embraced the whole of it; and because it does not show that the plaintiffs or their grantors had no opportunity to intervene in their own right for the interests which they had in the premises, and to institute proceedings on their own behalf for obtaining a confirmation of and a patent for the land to themselves.

The grant made by Governor Alvarado to Antonio Buelna did not invest the latter with the legal title to any specific four leagues of the tract of land mentioned, and which was delineated upon the *diseño.* The title which the grantee acquired, and held at the time of his death, was an inchoate or imperfect title as contradistinguished from a perfect and absolute title, and required action on the part of the Government to complete it; but notwithstanding the grantee's title was merely inchoate, he had, as between himself and the Government, a vested interest in the quantity of land mentioned in the grant. " The right to so much land to be afterward laid off by official authority in the territory described passed from the Government to him by the execution of the instrument granting it." (*Fremont* v. *The United States*, 17 How. 558.) This interest was property (*Estrada* v. *Murphy*, 19 Cal. 270) of a quality which could be assigned or transferred, or devised, and which in this case descended upon the death of Buelna, who died intestate, to his heirs at law. When the country was acquired by the United States, the heirs at law of Buelna had succeeded to the interest which the decedent had in the property in his lifetime, and then had a vested

interest in the quantity of land mentioned in the grant, which upon the cession of the country stood protected not only by the law of nations, but by the express terms of the treaty of cession. The title of the heirs at law being at that time inchoate, it was necessary, in order to perfect it, by which the designated quantity might become transferred in fee from the Government of the United States to the parties entitled, that the case should be submitted to and passed upon by the proper authorities constituted under the Act of Congress of 1851. In cases of this sort, if the claim was not presented for confirmation to the Board of Commissioners within the time prescribed by the Act, the lands claimed were thereafter to be deemed, held and considered as a part of the public domain of the United States. But the failure to present the claim, which had its origin in the grant to Buelna, by the parties having and holding the vested interest therein, did not extinguish that interest, which was ripened into a legal title by the confirmations, segregations and patents which followed upon the petitions of the patentees and in the proceedings had in the cases respectively before the properly constituted authorities. The lands patented are those in the first instance intended to be granted to Buelna, and the patents are founded upon that grant, which operated as a concession to the grantee of an interest in the lands mentioned, which, as already said, was property which the Government of the United States, upon the acquisition of the country, became under obligation to protect, both by the law of nations and the stipulations of the treaty of Guadalupe Hidalgo. It is true that the confirmations under the Act of 1851 must in the first place be held to operate to the benefit of the respective confirmees, and parties claiming under them, so far as the legal title to the premises is concerned; but this in nowise operates to bar the parties beneficially concerned and in justice and equity entitled to the possession and consequent enjoyment of the property, of the remedies and relief which they seek. In *Estrada* v. *Murphy*, 19 Cal. 272, the Court say : " If the confirmee, in presenting his claim, acted as agent, or trustee, or guardian,

or in any other fiduciary capacity, a Court of equity, upon a proper proceeding, will compel a transfer of the legal title to the principal, *cestui que trust,* ward or other party equitably entitled to the same, or subject it to the proper trusts in the confirmee's hands. It matters not whether the presentations were made by the confirmee, in his own name, in good faith, or with intent to defraud the actual owner of his claim; a Court of equity will control the legal title in his hands, so as to protect the just rights of others." (*Emeric* v. *Penniman,* 26 Cal. 124; *Castro* v. *Hendricks,* 23 How. 441.)

It is further objected that the complaint omits to allege that the heirs of Buelna were cognizant of the proceedings under which the two confirmations and patents were obtained, and therefore does not state facts sufficient to constitute a cause of action. This objection to be available must necessarily be found to subsist in the doctrine of estoppel *in pais,* for we do not think the heirs of Buelna were bound by anything in the Act of Congress of 1851 to intervene for the protection of their interests in the property in the proceedings instituted before the Board of Land Commissioners and subsequently prosecuted until final confirmation and patents were obtained. The proceedings so instituted were not necessarily adverse to the rights and interests of the heirs at law in the premises, and even if they were intended to be so, the fact of such intent could not, without a palpable manifestation of it on the part of Mrs. Rodriguez and Castro, communicated or presumed to be communicated to the equitable owners of the property, operate to create an equitable estoppel upon the heirs at law or the plaintiffs, their successors in interest. In *Davis* v. *Davis,* 26 Cal. 38, 39, we said: "Equitable estoppels *in pais* generally, if not universally, are applied to prevent injury which would ensue to one from the acts or declarations of another, were he permitted to gainsay the truth of such acts or declarations. The principle is invoked for the prevention of fraud, or that which is tantamount thereto, on the one side and injury on the other." Before the heirs of Buelna could be held to be estopped from asserting their claim

Opinion of the Court—Currey, C. J.

to the property, it must appear that by their conduct the parties who presented petitions to the Board of Commissioners and obtained confirmations and patents for the lands of the rancho, were influenced in their own conduct to their injury. But no circumstances are apparent upon the face of the complaint, from which it can fairly be inferred that the silence of the equitable owners of the property as to their claim to it had the effect of leading Mrs. Rodriguez and Castro into a line of conduct prejudicial to their interests. If they were not injured by such silence, they cannot say the plaintiffs are estopped in equity from asserting their alleged right to the land and the title thereto. (*Davis* v. *Davis,* 26 Cal. 40, 41, and cases therein cited; and *Bowman* v. *Cudworth, ante,* 148.)

We think the Court erred in sustaining the demurrer and in giving judgment for the defendants. Therefore the judgment must be and is hereby reversed with directions to the District Court to allow the defendants to answer the complaint.