Johnson, J.
In its entry disposing of the case finally, the court of appeals included a finding of facts. In substance the essential facts out of which the various legal questions arose are the following:
In 1886 James C. Barnes was the owner in fee simple of the land in question. Frances M. Barnes was his wife. They had four sons, John E., Charles W., Frank C, and James A., the plaintiff. Frank C. died in 1907 intestate, leaving a daughter Mary F. Barnes, and his widow, whose name is now Lottie Coy. In 1886, James C, the father, conveyed the property to John E., one of the sons, by warranty deed, for the recited consideration of $2,000. Frances M., the wife, was named in the deed as one of the grantors, though she had only an inchoate dower interest.
In 1890, John E. conveyed the property back to the father by warranty deed for the recited consideration of $4,000, and in this deed, the name of the wife, Frances M. Barnes, was included as grantee. *163 It is claimed that the insertion of the name of Frances M. was a mistake, and out of this contention the complications and the various questions of fact and law arose. James C., the father, and his wife occupied and had the full beneficial use of the property during the entire period and until their death.
In 1910, the father, James C, died testate. By his will he devised all of his real estate to his wife, Frances M., during her life, remainder to John E. and James A., the plaintiff. The will directed the payment of certain notes of the son Charles W., on which the father was surety, and contained a bequest of $300 to the daughter of the deceased son, Frank C. Barnes. The only estate the testator had was the farm in question. The widow elected to take under the will. John E. and the plaintiff, who had been appointed executor, surrendered to the son Charles W. the notes referred to in the will, and the estate of the father was settled.
In 1906 the mother, Frances M., divided certain other real estate owned by her among her four sons. Thereafter James A., the plaintiff, purchased the interest of one of the brothers in that land, and John purchased the interest of the other brother. So that the situation then was that James, the plaintiff, and John each owned one-half of the farm which had belonged to their mother, and under the will of the father each owned one-half of the home farm.
In 1912 the mother died intestate, and shortly thereafter James and John made an arrangement by which John delivered a quitclaim deed to James for his one-half of the home farm, and James *164 deeded to John his portion of the land which had belonged to their mother. From the death of the mother, the plaintiff, James A., was in full possession and control of the farm, and in February, 1917, employed an agent by an instrument in writing to sell it, and after some negotiations the agent secured an offer of $125 per acre, which was reported to James who authorized its acceptance. The real purchaser was Clyde K. Christy, the defendant, who made a payment of $1,000 on the purchase price, for which a receipt was given, including the language, “balance to be paid when deed and abstract of title are delivered and approved,” and shortly thereafter possession of the farm was delivered to Christy, who, except for a short intermission, has been in possession of it ever since. Pursuant to the agreement an abstract of title was prepared and thereby it was for the first time discovered that in the conveyance in 1890, from John E. to his father, the name of. the mother, Frances M., was also written as grantee. Therefore, Charles Barnes, the other surviving son, and Mary Barnes, the daughter of Frank, the deceased son, appear from the record to have an interest in the undivided one-half of the land as heirs of Frances, the mother, and the plaintiff in order to remove the cloud brought this suit to quiet his title. Charles Barnes, the brother, executed and delivered a quitclaim deed to the plaintiff to release any interest he might have, but Mary Barnes, Frank’s daughter, who was a minor, sets up by her answer a claim to an undivided one-eighth in the property as such heir. The defendant L. G. Hamilton, as admin *165 istrator of Frank C. Barnes, sets up an indebtedness owed by Charles Barnes to his brother Frank, which was reduced to judgment, and an attachment levied upon the interest of Charles in the land. It is conceded that the judgment is legal and regular, but it is denied that the attachment effected any lien on the property as against the plaintiff or defendant Clyde K. Christy. The attachment was made upon the interest of Charles Barnes after thé execution of the quitclaim deed by him. The quitclaim deed from Charles to James recited that it was given to correct a mistake in the deed from John •E. to his father, James C, in 1890. There was no other consideration for it, and at the time it was made Charles was insolvent.
Previous to the preparation of the abstract none of the parties had actual knowledge that in fact the name of Frances Barnes was written as a co-grantee with her husband in the deed from John E. in 1890, and none knew or supposed-that Charles Barnes, or Mary F. Barnes, the daughter of Frank, had any right, title or interest in.the land.
After the plaintiff had appealed the cause to the court of appeals, Christy was, on his own motion, made a party defendant and filed his answer and cross-petition, setting u-p substantially the facts as to his contract as above related and praying for specific performance of the contract of sale to him.
The court of appeals found the issues in favor of Christy, except as to the interest of Mary F. Barnes in the premises, and as to the lien of the judgment of L. G. Hamilton, administrator, and decreed that on the payment of the balance of the *166 purchase money — abating therefrom the interest of Mary F. Barnes, reserving the inchoate dower of Orleano G. Barnes, wife of Charles W. Barnes, making provision for the payment of the lien of Hamilton, administrator, and deducting the value of the dower of Minnie A. Barnes, the wife of the plaintiff, James A. Barnes, if she fails to release her dower interest in the property — the title of Christy to the property be quieted.
The plaintiff files his petition in error in this court as of right, because the case involves a question arising under the Constitution of Ohio. He asserts that the court of appeals had no jurisdiction under Section 6, Article IV of the Constitution, to permit Christy to be made a party defendant upon appeal in the appealed case, or to entertain and determine the claims made in his cross-petition in the court of appeals. He asserts that the cross-petition of Christy imported a new subject-matter, which was not part of the appealed case, nor incidental thereto, nor in aid of a complete determination.
In a number of cases which are recent and familiar, it has been determined that the jurisdiction of the court of appeals is conferred by Section 6, Article IV of the Constitution, and that the general assembly has no power to enlarge or limit that jurisdiction, but may provide by law the method of exercising it. Cincinnati Polyclinic v. Balch, 92 Ohio St., 415; Wagner v. Armstrong, 93 Ohio St., 443, and Thompson v. Denton, 95 Ohio St., 333.
The Constitution of 1912, in the schedule, expressly saves the laws then in force and not inconsistent therewith. Therefore, statutory provisions *167 which are applicable to the method of exercising the jurisdiction of the court of appeals are valid and effective. Section 12223, General Code, contains the provisions that the trial therein shall be conducted in the same manner as in the common pleas court and upon the same pleadings, unless amendments are permitted or ordered by the court of appeals. And Section 11363, General Code, provides that before or after judgment in furtherance of justice, and on such terms as it deems proper, the court may amend any pleading, process or proceeding by adding or striking out the name of any party, or by correcting a mistake in the name of a party, or a mistake in any other respect, or by inserting other allegations material to the cas'e.
So far as the question made here relates to procedure, the statutory provisions are applicable and controlling. Section 6, Article IV of the Constitution as amended in 1912, confers full “appellate jurisdiction [on the court of appeals] in the trial of chancery cases.”
So far as chancery cases are concerned the appellate jurisdiction of the court of appeals has not been lessened or made different from that formerly exercised by the district courts and circuit courts. It has been fortified in that now that jurisdiction is conferred by the Constitution.
Ohio has long differed from many states where appeal is in the nature of a writ of error and the appellate court confines its adjudications to errors appearing on the record of the court below. Here, when a chancery case is appealed, it no longer remains in the court below. ,The whole case goes up *168 for trial de novo. The appellate court has the same jurisdiction of the subject-matter of the action, the same control of the pleadings, and, if necessary, of the issuing and service of process, and the final determination of the case, that the court below had.
A court of equity aims to do complete justice by deciding upon and settling the rights of all parties interested in the subject-matter of the suit. And it may be said that as a general rule all persons materially interested either legally or equitably in the subject-matter are proper parties, so that there may be a complete decree, which shall bind them all and terminate litigation.
As said by Judge Story:
“The case against one defendant may be so entire, as to be incapable of being prosecuted in several suits; and yet some other defendant may be a necessary party to some portion only of the case stated. In the latter case the objection of multifariousness could not be allowed to prevail. So it is not indispensable, that all the parties should have an interest in all the matters contained in the suit; it will be sufficient, if each party has an interest in some matters in the suit, and they are connected with the others.” Story’s Equity Pleadings, Section 271a.
Did the answer and cross-petition of Christy import a new subject-matter into the case, not part of the appealed case, nor incidental thereto, nor in aid of its complete determination? We think not. It must be remembered that the object and prayer of Christy’s pleading was for equitable relief to enforce the performance of his contract with plain *169 tiff, with reference to the very land involved in the proceeding in the court below. Not only this, but Christy averred in his reply that Mary F. Barnes and Hamilton, administrator, had no interest in the property as coming from Frances M. Barnes, for the reason that the equitable title never vested in her, and that by reason of her actions with reference to the same she and all claiming under her were estopped from asserting any interest in the 'property.
In Henry v. Jeans et al., 48 Ohio St., 443, a new party was made in the trial court after judgment, and the general subject is discussed at page 457. Section 5225, Revised Statutes, now Section 12223, General Code, supra, is quoted by the court. And it is said: “If we consider this section in connection with section 5114 [now Section 11363, General Code], it will be apparent that amendments of pleadings, and the inserting of new allegations, may be permitted under both sections. But there is nothing in the section regulating trials on appeal, that invalidates or renders nugatory amendments permitted under section 5114. If new parties and interests arise or are discovered after appeal, they ' may be brought under the cognizance of the circuit court, and section 5225 would cover cases of that class, as section 5141 would embrace interests and parties omitted and brought to the notice of the court of common pleas after judgment and before appeal. But the orders of the respective courts authorizing new parties to be made and new pleadings to be filed, are alike in the interest of justice, and alike to be sustained.”
*170 In the leading case of Grant, etc., v. Admr, of Ludlow, 8 Ohio St., 1, it is said, at page 32: “And hence the amendment of pleadings, in the appellate court, can not be permitted, so as to substitute for the cause of action originally brought a new and different cause of action for the determination of the appellate court. But it not unfrequently happens, especially in equity cases, that facts and allegations necessary to determine the subject-matter of the original cause of action, and dependent upon and growing out of the original cause of action, have been omitted in the pleadings below, or the cause of action is imperfectly stated. Such amendments have been heretofore allowed on appeals in this state; and when the collateral facts, in equity suits, made it necessary to bring a new party before the court, it has been allowed. Such amendments are made for the purpose of settling and fully determining the cause of action appealed.”
In this case the title of the farm and the claims of the respective parties therein constituted the subject-matter of the suit. The claim of Christy related to the same subject-matter, and the question of its validity affected intimately and closely the claim of every other party to the suit in the same subject-matter. The appeal invoked the jurisdiction of the court of appeals in the trial of a chancery case, and the application of the ordinary principles in proceedings in chancery cases was proper.
These views are also sustained in Babcock & Co. v. Camp, 12 Ohio St., 11, and Morgan & Co. v. Spangler, 20 Ohio St., 38.
*171 On the trial in the court of appeals the plaintiff called John E. Barnes and Charles W. Barnes, his brothers, as witnesses. The court of appeals sustained an objection to the competency of those witnesses, and that ruling is assigned as error by the plaintiff in error here. These,witnesses were called by the plaintiff to' maintain the issue on his part with reference to the mistake in the inclusion of the name of Frances M. Barnes in the deed made by John E. Barnes in 1890 to his father, and otherwise with reference to the interest of their mother in the land, including matters of estoppel which were asserted.
The court of appeals was of the opinion that the testimony of these witnesses was incompetent because of the provisions of. Section 11495, General Code, to-wit: “A party shall not testify when the adverse party is the guardian * * * of * * * an insane person, or of a child of a deceased person, or is an executor or administrator, or claims or defends as heir, grantee, assignee, devisee, or legatee of a deceased person.”
We think it clear that the testimony of the two brothers named was not incompetent under the section quoted. At the time of the trial neither of them was a party to the suit and neither had any interest whatever in the subject-matter of the controversy.
It will be remembered that John and Charles had executed and delivered to James quitclaim deeds for their entire interest in the land in question. Both of them had filed pleadings in the case in which they disclaimed any interest whatever in the land. It is easy to see that the testimony of the two sons, *172 John and Charles, might be of vital importance to the plaintiff. They were connected with and had intimate knowledge of all the facts and circumstances leading up to the making of the deed in 1890 by John, which contained the name of the father and mother as grantees, of the manner in which the mother treated the transaction thereafter, and of all the facts which might impress upon the legal title of Frances and her heirs a constructive trust in favor of the plaintiff.
The principle is well settled that where a person through mistake obtains the legal title and apparent ownership of property, which in justice and good conscience belongs to another, the property is impressed with a trust in favor of the equitable owner.
In 18 Corpus Juris, 225, it is said: “Where a voluntary conveyance is executed by a person, and by reason of a material mistake therein the instrument is not that which the grantor intended to execute, it may be set aside by a court of equity. * * * it has been held sufficient to show that a husband’s name was placed in a deed as grantee or as a cograntee with his wife by mistake, where it is shown that he paid none of the consideration and disclaimed any ownership in the property; and where it is clearly established that by mistake of the grantor the wife of the grantee was named in the deed as a cograntee, the mistake may be corrected.” It is said in 23 Ruling Case Law, 332: “There are many instances of the courts’ correcting mistakes in names of the parties and of other persons mentioned in the instrument, such as naming a person as grantee by mistake, as where a con *173 veyance was made to husband and wife instead of naming the wife as sole grantee.” The same principle is declared and upheld in 1 Story’s Equity Jurisprudence (14 ed.), Sections 227, 228 and 229; Wilson v. Castro, 31 Cal., 420; Paddock v. Adams & Holly, Exrs., 56 Ohio St., 242; 39 Cyc., 171, and authorities cited there.
Knowledge on the part of the beneficiary is not essential to a resulting trust. 26 Ruling Case Law, 1215.
If the testimony of the witnesses whose competency is dénied had been received, and if it had clearly shown that neither John E. Barnes, the grantor, nor his mother, nor his father, at any time intended her name to appear as co-grantee in the deed of 1890, or knew that it did so appear, and if that testimony would have shown that the insertion of her name as a grantee was a mistake and a pure inadvertence of the scrivener, which was not discovered until after the death of both the father and mother, then upon principles of justice and equity and well-established rules none of the children of those deceased parents, nor their descendants, are entitled to assert as such any interest in the land as against the plaintiff, James Barnes.
Upon like principles, the testimony with reference to the will of James C. Barnes and the action of the widow and heirs in connection with the settlement of his estate pursuant to the terms of his will was competent. However, the fact that Frances M. Barnes elected to take under the will of her husband, which devised to her all of his real estate dur *174 ing her natural life, would not preclude her or her heirs from setting up that she was the owner in fee simple of the one-half interest in the farm, if in fact and law she was, because the will only purported to devise to her all of his real estate and her election only related to the estate of which he was legally seized.
Concerning the judgment of L. G. Hamilton, administrator of Frank Barnes, against Charles W. Barnes, the brother of Frank, it is sufficient to say that if the plaintiff should fail in his contention that Frances M., the mother, had no real interest in the land in question, then of course on her death intestate her son Charles became vested with an undivided interest in her share of the farm, which was subject to the levy of a valid judgment against him, and as the quitclaim made by him to James was without consideration the conveyance would not be good as against existing creditors of Charles.
The court of appeals also included in the entry of its final decree a clause providing for the deduction of the value of the dower of Minnie Á. Barnes, wife of the plaintiff, if she fails to release her dower interest in the property.
The court did not find that the wife of the plaintiff agreed to sell to Christy at the price accepted by her husband or agreed to release her dower therein. She positively denied that she did so, and there is no finding by the court that her refusal was the result of any collusion between herself and her husband, and she has signed no written instrument whatever requiring her to release her dower in *175 terest. In this situation we know of no rule which would permit a decree requiring the plaintiff to convey the premises to the purchaser on payment of the contract price with a reduction of a supposed value of the inchoate dower of the wife. So far as this state is concerned the contrary rule has been declared in Lucas v. Scott, 41 Ohio St., 636, and in Peoples’ Savings Bank Co. v. Parisette, 68 Ohio St., 450, which we approve and follow. The decree should also have fixed a time in which Christy should pay into court or to plaintiff the amount to be paid.
For the reasons given, the judgment of the court of appeals will be reversed and the cause remanded for further proceedings in accordance with this opinion.

Judgment reversed.

Marshall, C. J., Hough, Wanamaker, Robinson, Jones and Matthias, JJ., concur.