Mr. Justice CAMPBELL
 

 delivered the opinion of the court.
 

 This cause came before this court by appeal frCm the District Court of the United States for the northern district of California, and was decided at the last term, and is reported in 20 How., 413.
 

 The court determined:
 

 “ That a grant under which the plaintiff claimed land in California was valid for one league, to be taken within the south
 
 *447
 
 ern, western, and eastern boundaries designated therein, at the • election of’ the grantee and his assigns, under the restrictions established for the location and survey of private land claims in California by the éxecutive department of the Government. The external boundaries of the grant may be declared by the District Court from the evidence on file, and such other evidence as may be produced before it; and the claim of an interest equal to three-fourths of the land granted is confirmed to the appellee.”
 

 The District Court, in conformity with the directions of the ' decree, declared the external lines on three sides of the tract claimed, leaving the other line to be. completed by a survey to be made. From' the decree, in this form, the United States have appealed.
 

 A motion has been submitted to the court for the dismissal of the appeal, because the decree of the District Court is interlocutory, not final.’
 

 ’ This motion is resisted, because the inquiries and decrees of the board of commissioners for the settlement of private land claims in' California, by the act of 3d March, 1851, (9 S. at L., 632,) in the first instance, and of the courts of the United States on appeal, relate only to the question of the validity of the claim — and by validity is meant its authenticity, legality, and in .some cases interpretation, but does not include any question of location, extent, or boundary — and that the District Court has gone to the full limit of its jurisdiction in the decree under ' consideration, if it has not already exceeded it.
 

 The matter submitted by Congress to the inquiry and determination of the board of commissioners, by the act of 3d March, 1851, (9 Stat. at Large, 632, sec! 8,)'and to the courts of the United States on appeal, by that act and the act of 31st August, 1852, (10 Stat. at Large, 99, sec. 12,) are the claims
 
 “ of’
 
 each and every person in California, by virtue of any right or title derived from the Spanish or Mexican. Government.” And it will be at' once understood that these comprehend all private claims to land in California.
 

 The effect of the.inquiry and decision of these tribunals upon the matter submitted is final and. conclusive. If unfavorable
 
 *448
 
 to the claimant, the land “ shall be deemed, held, and considered, as a part of .the public domain of the United States;” but if favorable, the decrees rendered by the commissioners or the courts “ shall be conclusive between the United States and the claimants.”
 

 These acts of Congress do not create a voluntary jurisdiction, that the claimant may seek or decline. All claims to land that are withheld from the board,of commissioners during the legal term for presentation, are treated as non-existent, and the land ás belonging to the public domain.
 

 Thus it -appears that the right and title of the inhabitants of California, at the date, of the treaty of Guadalupe Hidalgo, to land within its limits, with the exception of some within the limits of a pueblo or corporation described in the 14th section of the act of 3d March, 1851, must undergo the scrutiny of this board, and that its decisions are subject to review in the District and Supreme Courts. This, jurisdiction comprehends every species of title of right, whether inchoate or complete; whether resting in contract or evinced by authentic act' and judicial possession.
 

 The object of this inquiry, was not to discover forfeitures or to enforce rigorous conditions. The declared purpose was to authenticate titles, and to afford the solid guarantee to rights which ensues from their full acknowledgment by the supreme authority. The tribunals were therefore enjoined to proceed promptly, and to render judgment upon the pleadings and evidence ; and in deciding, they were to be governed by the laws of nations, the stipulations of the treaty of Guadalupe Hidalgo, the laws, usages, and customs, of the Government from which the claim is derived, the principles of equity, and the decisions of the Supreme Court of the United States in similar cases.
 

 “What are the questions involved in the inquiry into the validity of a claim to land ? .
 

 It is obvious that the answer to this question must depend, in a great measure, upon the state and condition of the evidence. It may present questions of the genuineness and authenticity of the title, and whether the evidence is forged or fraudulent; or, it may involve an inquiry into the authority of
 
 *449
 
 the officer to make a grant, or whether h¿ was in the exercise of the faculties of his office when it was made; or, it may disclose questions of the capacity of the grantee to take, or. whether the claim has been abanc[oned or is a subsisting title, of has been forfeited for a breach of conditions. Questions of each. kind here mentioned have "been considered by the court in cases arising under this law.'
 

 But, in addition to these, questions upon the vitality of the title, there may ,arise questions of extent, quantity, location, boundary, and legal operation, that are equally essential in determining the validity of the claim.
 

 In affirming a claim to land under a Spanish or Mexican grant, to be valid'within the'law of nations, the stipulations of ’the treaty of Guadalupe Hidalgo, and the usages of those Governments, we imply something more than that certain papers are genuine, legal, and translative of property. ¥e affirm that •ownership and possession of land of definite boundaries rightfully attach to the grantee.
 

 In the case of the United States
 
 v.
 
 Arredondo, (6 Pet., 691,) the inquiries of this court, beside those affirming the legality of the'grant, extended to questions of forfeiture for the non-fulfilment of conditions, the inalienability of lands in possession of an Indian, tribe, and frarid. The Superior Court of Elorida in that suit, directed that the. land should be surveyed, in the form of a square, with a designated monument as the centre. This court annulled that decree, and ascertained another as the central point. The appeal in Mitchell
 
 v.
 
 United States (15 Pet., 52) was taken in a case that had been.decided here, and in whieh an issue upon the decree that succeeded’the mandate ' of this court, and made in execution of'it, subsequently arose; Certain property about Port St. Mark’s was excepted in the original decree of-confirmatiqn, and reserved to the United , States, and the Superior Court in that decree was directed to ascertain the extent and boundaries of the land reserved. This was done and the, land specifically described, and on appeal this decree was affirmed.
 

 These questions arose upon an act of Congress that required the courts, “by a.final decrée, tó settle- and determine the ques
 
 *450
 
 tion of the validity of the title according to the law of nations, the stipulations of any treaty and proceedings under the same, the several acts of Congress in relation thereto, and the laws and ordinances of the Government from which it is alleged to have been derived.” This act enumerates as proper to be-heard and decided, preliminary to such a decree, questions of extent, location, and boundary. (4 Stat. at L., 52,- sec. 2.)
 

 It is asserted on the part of the appellants that the District Court has no means to ascertain the specific boundaries of a confirmed claim, and no power to' enforce the execution of its decree, an'd consequently cannot proceed further in the cause than it has done.
 

 The 18th section of the act of 3d March, 1851, makes it the duty of the surveyor general to cause all private claims which shall be finally confirmed to be accurately surveyed, and to furnish plats of the same. It was the practice under the acts of 1824 and 1828, (4 Stat. at L., 52, 284,) for the court to direct their mandates specifically to the surveyor designated in those acts. And in the case
 
 ex parte
 
 Sibbald
 
 v.
 
 United States, (12 Pet., 488,) the duty of the surveyor to fulfil the decree of the court, and the power of the court to enforce the discharge of that duty, are declared and maintained. The duties of the purveyor begin under the same conditions, and are.declared in similar language, in the acts of 1824, 1828, and of 1851.
 

 The opinion of -the court is, that the power of the District Court over the cause, under the acts of Congress, doe? not terminate until the issue of a patent, conformably to the decree.
 

 In the exercise- of the jurisdiction conferred by this act, and acts of a similar character, this court has habitually revised decrees of the District Court, which were not final decrees' under the judiciary act of 1789. The court has uniformly accepted, in the first instance, as a final decree, one that ascertained the authenticity of the claimant’s title, and declared, in general terms, its operation, leaving the questions of boundary and location to be settled subsequently. This practice was approved in the case last cited. The peculiar nature of. these cases rendered such a relaxation of the rules of proceeding of the court appropriate. The United States did not. appear in
 
 *451
 
 the courts as a contentious litigant; but as a great nation, acknowledging their obligation to recognise as valid every ¿uthentic title, and soliciting exact information to direct their executive Government to comply with that obligation.
 

 They had instrumentalities adequate to the fulfilment of their engagements without delay, whenever their existence was duly ascertained. There was no occasion for - the strict rules of proceeding that experience has suggested to secure a speedy and exact administration between suitors of a different character. ' And it has rarely occurred that, the same case has reap-, peared in the court after the first decree.. If the litigation had been other than it was, the rule of proceeding would have varied with it. ■ ■
 

 But, after the authenticity of the grant is ascertained in this court, and a reference has been made to the District Court, to determine’the external bounds of the grant, in order that the final confirmation may be made, we cannot understand upon what principle an appeal cari be claimed until the whole of the directions of this court are complied with, and that decree made. It would lead to vexatious and unjust delays to sanction such a practice. It is the opinion of the court that this appeal was improvidently taken and allowed, and must be dismissed; and ' that the District Court proceed to ascertain the external lines of the land confirmed to the appellee, and enter a final decree of confirmation of that land.