UNITED STATES v. PERALTA (GWIN, Intervener).

(District Court, N. D. California. January 29, 1900.)

No. 100.

**1. EQUITY—PLEADING—TREATING DEMURRER AS SPECIAL PLEA.**

Where a petition filed in an equity cause, praying certain action of the court, alleged to be necessary to enforce a prior decree entered in the cause, omits any reference to certain prior orders and decrees, a demurrer to such petition, which, among other grounds, avers such omission, and pleads such orders and decrees as a bar to the relief asked, in the absence of objection thereto may be treated, as to such matters, as a special plea; and the court, in passing thereon, will assume the truth of the facts alleged in the petition which are not controverted, and that the facts as to the matters which are controverted by the special demurrer or plea are as therein set forth.

**2. PUBLIC LANDS—SPANISH GRANTS—DECREE CONFIRMING TITLE.**

A decree of a district court of the United States affirming a decision of the board of land commissioners created by Act March 3, 1851, "to ascertain and settle private land claims in the state of California," which adjudged the validity of a claim under a Spanish and Mexican grant, while conclusive as to the title of the claimant,—having been affirmed by the supreme court,—was not final as to the boundaries of the grant, where it had not been surveyed, but under said act of 1851, and the amendatory and supplemental acts of 1860, 1864, and 1866, the court retained jurisdiction to require the survey, when made by the surveyor general, to be returned into court, and to confirm or direct the modification of such survey, and, when finally confirmed, to render a final decree fixing and determining the location and boundaries of the grant; and such decree, when unappealed from, and when carried into effect by the issuance of patents by the United States in conformity thereto, became final and conclusive as to such boundaries, and the court was deprived of further jurisdiction to modify the same.

**3. SAME—REVIEWING ACTION OF LAND DEPARTMENT.**

After the land department has issued patents to a Spanish and Mexican grant in conformity to a decree of court confirming the grant, and to a survey thereof approved and confirmed by the court, such court cannot entertain a petition to compel the issuance of patents in accordance with a different survey. The patent is the culmination of such proceedings, and, so long as it remains in force, conclusively determines the location and extent of the grant.[1]

Demurrer to petition for the enforcement of a judgment, and for an order to compel the United States to issue a patent.

On July 27, 1899, Mary E. H. Gwin, intervener herein, filed the following petition:

"The petition of Mary E. H. Gwin, intervening in this proceeding for her interest, by leave of the court first had and obtained, respectfully shows that heretofore, to wit, on the 21st day of January in the year 1852, Antonio Peralta, Vicente Peralta, Ignacio Peralta, and Domingo Peralta, claiming lands in California by virtue of a right and title derived from the Spanish and Mexican governments, presented to and filed with the board of United States land commissioners constituted under the act of congress entitled 'An act to ascertain and settle the private land claims in the state of California,' passed March 3, 1851, their claim for the lands of the rancho of San Antonio, in said

---

[1] As to conclusiveness of decisions of land department, see notes to Hartman v. Warren, 22 C. C. A. 38; Carson City Gold & Silver Min. Co. v. North Star Min. Co., 28 C. C. A. 344.

state, together with such documentary evidence and testimony of witnesses as the petitioners relied upon in support of their said claim; that thereupon the said board, when the case was ready for hearing, proceeded to, and did, examine such claim upon such evidence, and the evidence produced in behalf of the United States, and did decide upon the validity of the claim, and did certify its decision, with the reasons on which it was founded, in due time, to the then district attorney of the United States in and for the Northern district of California; that afterwards, and after due proceedings had in this court, this court, in land case No. 100, did review the said decision of said commissioners, and did affirm the validity of the claim of said petitioners, and did render judgment on the pleadings and evidence in the case by its decree duly given and made on the 26th day of January, in the year 1855; that afterwards, and on appeal by the United States, duly granted by this court, to the supreme court of the United States, that tribunal, by its decision duly given and made at the December term in the year 1856, did affirm the validity of the grant, and the claim of the said petitioners thereunder, and did remand the case to this court for further proceedings in accordance with its opinion. Your petitioner further shows that thereafter this court, by its decree duly given and made on the 30th day of November in the year 1859, filed December 1, 1859, duly amended its said decree to conform to the said decision and opinion of the supreme court. Your petitioner further shows that afterwards, and on the 23d day of July in the year 1866, the congress of the United States passed an act entitled 'An act to quiet land titles in the state of California;' that by the eighth section of said act it was provided that in the event that no survey of the said grant had been before the passage of said act requested by said confirmees, nor had any such survey been requested within ten months after its passage, the duty was devolved upon the surveyor general of the United States for California, as soon as practicable thereafter, to extend the lines of the public surveys over said grant, and to set off in full satisfaction of the grant the quantity of land confirmed in the said decree, as nearly as could be done in conformity with such decree. Your petitioner further shows that no survey of the grant of the San Antonio rancho confirmed in this proceeding had been requested by the confirmees or their assigns before the passage of said act, nor had any survey thereof been requested by them within ten months after the passage of said act, nor had any such survey been made, and it thereby became the duty of the surveyor general of the United States for California, as soon as practicable from the expiration of ten months from the passage of said act, to set off in full satisfaction of such grant, and according to the lines of the public surveys, the quantity of land confirmed in the final decree herein, as nearly as could be done in accordance with such decree; that afterwards, and on or about the 25th day of November in the year 1895, and as soon as practicable after the passage of the said act of July 23, 1866, the said surveyor general duly made, approved, and certified a plat of the survey of the said rancho of San Antonio, in accordance with, and in part execution of, the said decree of this court. Your petitioner here further shows that she is interested in the lands of the said rancho under the said claimants and confirmees, and that her title thereto was derived by mesne conveyances from the said confirmees, as will more fully appear by reference to the public official records of the counties of Contra Costa and Alameda, in the state of California, to which records she prays leave to refer, and makes them a part of this, her petition. Your petitioner further shows that thereafter the said plat of survey was, on or about the 2d day of September in the year 1896, presented to the honorable the commissioner of the general land office of the United States, at the city of Washington, District of Columbia, together with duly-certified copies of said several decrees, and an authentic certificate of such confirmation, by your petitioner, Mary E. H. Gwin, and one Francisco Sanjurjo, since deceased, together with a deraignment of their respective titles thereunder from the said claimants, confirmees, Vicente, Domingo, Antonio, and Ignacio Peralta, with a request that he issue, or cause to be issued, to said claimants, confirmees, Vicente Peralta and others, a patent for the lands of the rancho, in accordance with such plat of survey, in due form of law. Your petitioner further shows that the said commissioner, whose duty it was to prepare, and cause to be properly signed and issued, upon re-

ceipt of such plat of survey and certificate of confirmation, a patent to the said claimants, confirmees, for the said lands, although often requested, has neglected and refused, and still does neglect and refuse, and did on the 22d day of January in the year 1898 expressly refuse, to prepare and issue, or cause to be issued, such patent, to the great damage of petitioner; that thereafter, and within due time, your petitioner here duly took and perfected an appeal from the said refusal and decision of the said commissioner to the honorable the secretary of the interior of the United States, which appeal was in due time heard and considered, and on the 5th day of July in the year 1898 the said refusal and decision by the said commissioner was by the honorable the said secretary expressly approved and affirmed, and he, the said secretary, refused, and does still refuse, to issue, or to order issued, a patent for the lands of the said rancho to the said claimants, confirmees, as aforesaid, or to any one for their use, or at all, to the great damage of your petitioner. Your petitioner further shows that the act of the said surveyor in making and certifying the said plat of survey was the act and deed of the said the United States; that the said plat was accepted by your petitioner on behalf of the said claimants, confirmees; that the same has never been appealed from, reversed, or set aside. And your petitioner prays leave to refer to the said plat of survey, now on file and of record in the proper land office of this district, and in the department of the interior of the United States, or to a certified copy thereof, and to make the same a part of this, her petition. Wherefore, your petitioner prays that the decree of this court so made and entered in this proceeding on the 30th day of November in the year 1859, and filed December 1, 1859, may be ordered to be executed; that the United States may, by the order and judgment of this court, be directed and required to cause to be made, signed, and issued to the said claimants, confirmees in the proceeding, its patent, in due form of law, for the lands of the rancho of San Antonio, or for so much and such parts thereof as have not heretofore been patented to them or any of them, by a day to be fixed in such order and judgment, and that in default thereof the United States show cause before this court, at a time and place to be fixed in such order and judgment, why she has not so made, signed, and issued, caused to be made, signed, and issued, such patent; and that your petitioner may have such further and other, or other and further, order and relief in the premises as may be just and agreeable to equity."

The United States of America, by and through its attorney, Frank L. Coombs, United States attorney for the Northern district of California, demurs to the petition of Mary E. H. Gwin, filed herein, and for cause of demurrer shows to the court the following:

"First. That the petition herein does not show from whom petitioner derives, or claims to derive, title to the lands or interests in controversy. Second. That it does not appear, and, as a matter of fact, is not true, that the decree of this court made on the 30th day of November, 1859, and referred to by petitioner, was and is the final decree of this court in and in relation to the matters and issues involved in this cause. Third. That the decree made by this court on the 30th day of November, 1859, and referred to as a final decree, with reference to the lines of said grant established thereby, and with reference to the surveys directed thereunder, but was subsequently thereto changed and modified with reference to said lines and surveys by other decrees, and especially by a decree of this court made on the 4th day of October, 1871, which was and is the final decree of this court, and the final order with reference to said lines and surveys. Fourth. That it does not appear from said petition that the act of congress of July 23, 1866, cited and referred to in said petition, empowered the surveyor general of the United States for California to do and perform the things, especially in reference to the plat and survey alleged to have been transmitted to the commissioner of the general land office in Washington. Fifth. That the map and survey made by the surveyor general of the United States for California as aforesaid was made contrary to and without authority of law, and without authority of this court, and in defiance of its order and decree, and especially in defiance and in contravention of its decree of October 4, 1871, in relation thereto, as fully appears by the records in this cause. Sixth. That it does not appear from the petition that there was not a request

made in conformity with law for a survey of the lands confirmed by the decree of October 4, 1871, and in conformity therewith, and it does not appear that the surveyor general aforesaid did not transmit, or cause to be transmitted, a proper map or survey of said lands in conformity with said decree; that it does not appear that any or all of the requirements of law in relation to such matters were not strictly complied with under and by virtue of said final decree of October 4, 1871. Seventh. That this court has no jurisdiction over these proceedings, having heretofore, to wit, on the 4th day of October, 1871, fully determined, by its decrees made and entered on said day, all of the matters in controversy pertaining to the validity of said grant and the survey and lines established thereunder, and for the further reason that, in conformity with said decree, patents have been issued to all of the claimants by the United States of America, and have been accepted by them, their heirs and assigns, for more than twenty years last past. Eighth. Further, that this court is without jurisdiction, for the reason that it appears from the proceedings herein that the particular lands claimed by the petitioner were determined in these proceedings to be lands held by the state of California by reason of its sovereignty, and were awarded in said decree to the particular interveners claiming under the said state of California, and were ordered therein not to be included in, but to be excluded from, the lines of said Rancho San Antonio, as the same were established by said final decree of confirmation. Ninth. The court is without jurisdiction for the reason that it appears upon the petition herein that petitioner presented her application and petition to the commissioner of the general land office, asking for an adjudication of her rights, and for a patent to the lands claimed by her, which, as appears by the petition herein, were determined upon by said commissioner, and, upon appeal being taken to the secretary of the interior of the United States by petitioner, the said decision of the commissioner was confirmed and approved. Tenth. That this court is without authority and jurisdiction, for the reason of the causes above alleged, to give the relief sought in this petition, or to order and direct that a patent, or any patent at all, be issued by the government of the United States of America, or by any of its agents acting thereunder, to said lands, or any part thereof. Eleventh. That it does not appear that any of the acts directed to be done and performed by the final decree of this court have not been done in conformity therewith and with law. Twelfth. That the petition does not state facts sufficient to entitle the petitioner to the relief demanded therein."

The decree of 1859, which is claimed by petitioner to be the final decree, reads as follows:

"It satisfactorily appearing to the court that in the decree of this court heretofore entered in this cause, and affirmed on appeal by the supreme court of the United States, a clerical error has intervened, and that the said decree is repugnant and inconsistent with itself; and it further appearing to this court that the northern boundary of the tract of land confirmed to said claimants is erroneously described as running by the southern base of the Cerrito, therein mentioned, whereas the said northern boundary, as declared and adopted by the supreme court of the United States in the opinion of said court in this case, is 'the rivulet which issues from the mountain range, and runs along the foot of said Cerrito of San Antonio, and at the entrance of a little gulch there is a rock elevating itself in the form of a monument, and looking towards the north'; and it appearing to this court that the rivulet so adopted as the said northern boundary runs along the northern base of the said Cerritos of San Antonio, and not along the southern base thereof; and it further appearing that the ridge of mountains constituting the eastern boundary of said rancho is erroneously denominated its western boundary, as is manifest from the face and terms of the decree itself,—it is, on motion of the counsel for the parties interested in said claim, and the district attorney being present and not objecting thereto, ordered that the said decree be, and the same hereby is, construed and amended by substituting the word 'northern' for 'southern' where the word 'southern' the first time occurs in said decree, and the word 'eastern' for 'western' where the latter word first occurs in said decree.

"Ogden Hoffman, U. S. Dist. Judge.

"[Indorsed]   Filed December 1, 1859."

The record in the original case of United States of America against Vicente Peralta et al. (No. 100) shows that on June 5, 1871, the following decree was entered in said cause:

"This cause came on this day again to be heard upon objections to the modified survey filed in this cause, and was argued by counsel, and thereupon, and in consideration thereof, it is ordered, adjudged, and decreed that the said modified survey be, and the same is hereby, set aside, as not being in conformity with the direction of this court heretofore entered and given in this cause; and it is further ordered, adjudged, and decreed that the said survey hereby set aside be modified between course 93 and course 113, as the same are laid down on the plat heretofore filed in this cause of the survey of said lands made by James T. Stratton, United States deputy surveyor, and approved by J. W. Mandeville, United States surveyor general for the state of California, on the 3d day of March, 1860, so as to include all of the lands between said course down to the ordinary high-water line, and exclude only so much land between said courses as is covered by the tide which happen between the full and change of the moon, twice in 24 hours. And it is further ordered, adjudged, and decreed that the surveyor general of the United States for the state of California cause said survey hereby set aside to be modified, without delay, in accordance with this decree, and return a plat of the same into this court for its approval; and, in determining the line of ordinary high water between the courses aforesaid, it is further ordered, adjudged, and decreed that the said surveyor general adopt the line fixed as such by the officers of the United States coast survey, as the same is delineated, on the plat marked 'Exhibit Rogers No. 1,' and described in the field notes of said survey, copies of which are on file in this cause.

Ogden Hoffman, District Judge."

And on August 4, 1871, a decree approving the survey made in conformity with the decree of June 5, 1871, was entered, as follows:

"This cause came on this day again to be heard, and it appearing to the court that no exception has been filed to the modified survey heretofore made under order of this court, and a plat of which was filed in the clerk's office of this court on the 26th day of July, 1871: Now, therefore, on motion of Williams & Thornton, due notice thereof having been given, it is ordered, adjudged, and decreed that this court doth hereby order, adjudge, and decree that said modified survey be, and is hereby, approved, as a true and correct location of the lands confirmed in the above-entitled cause. The survey, of which confirmation is hereby made, contains eighteen thousand eight hundred and forty-eight $98/100$ (18,848 $98/100$) acres, and is the same executed under the order and direction of this court, by decree entered in this cause on the 5th day of June, 1871, a duly-certified plat whereof was filed in the clerk's office of this court as aforesaid on the 26th day of July, 1871, and is marked: 'Approved August 4th, 1871. Ogden Hoffman, Dist. Judge,'—and attached hereto as a part of this decree.                    Ogden Hoffman, U. S. Dist. Judge."

Boyd & Fifield, for petitioner.

Frank L. Coombs, U. S. Atty., and Marshal Woodworth, Asst. U. S. Atty.

HAWLEY, District Judge (after stating the facts). The petition and demurrer, which have been copied verbatim in the foregoing statement, are deemed sufficient to explain the nature and character of this proceeding, and to render it unnecessary to refer in detail to the steps that were taken in the original case prior to the rendition of the decree of November 30, 1859, filed December 1, 1859. For the purpose of disposing of the questions raised by the pleadings herein, it will be admitted, without discussion, that the court has jurisdiction, and is possessed of the inherent power and authority to do whatever is necessary to be done in order to enforce its

lawful decrees. It must not, however, be understood by this admission to include the proposition that in proceedings like the present the court has any jurisdiction, power, or authority to order or direct the issuance of a patent by the United States, as prayed for by the petitioner. That branch of the question will be hereafter referred to.

The pleadings upon this motion are peculiar, in this: That the petition of the intervener does not state all the proceedings in the suit of United States against Peralta; and the United States, instead of answering the petition and setting up all the facts, demurs thereto, thereby admitting, in the eye of the law,—in so far as the demurrer can be treated as a general demurrer,—that the allegations of the petition are true. It is apparent that the petition does not state all of the steps that were taken by the court after the decree of 1859. It entirely ignores any reference to the proceedings of this court in rendering the decree of 1871, and of the steps taken thereunder which resulted in the issuance of a patent to the claimants in the original suit. Counsel, in illustrating their arguments in favor of or against the demurrer, have detailed many facts in regard to the proceedings had in the original case, and the decrees rendered therein, and the various steps taken thereunder. The contention of petitioner's counsel is that the court should not consider any facts whatever, except those mentioned in the petition and admitted by the demurrer. The argument on the part of the United States is to the effect that the court is bound to take judicial notice of its own orders and decrees made in the original suit, regardless of the question whether they are set forth or referred to in the petition under consideration or not. In relation to these contentions, it will be observed that the demurrer, with the exception of a few points made therein, must be considered as a special demurrer, in the nature of a special plea, setting forth facts why the relief asked for should not be granted. It does not admit, but, on the contrary, expressly denies, that the decree of this court made November 30, 1859, and filed December 1, 1859, "is the final decree of this court in relation to the matters and issues involved in this cause," and, in this connection, avers that the decree of 1859, with reference to the lines of the grant established thereby and with reference to the surveys directed thereunder, was subsequently changed and modified with reference to said lines and surveys by the decree made October 4, 1871, and other decrees, and that this was and is the final decree of this court with reference to said lines and surveys. The pleading interposed by the United States is not a speaking demurrer, in the sense that it endeavors to bring in a state of facts independent of the records in the original cause, and to bind the petitioner by such statement. This cannot be done. The pleading, by whatever name it may be called, only seeks to complete the record of the decrees made in the original case, without a consideration of which the court could not properly decide the questions sought to be raised by an imperfect or incomplete statement of the record. As the petition does not contain all the essential facts of the original case with reference to the decree of 1859, and of the steps taken by the court thereunder, I fail to see any good or substantial reason

why such facts could not be as well supplied by a special demurrer or plea as by an answer. The principles in relation to the effect of the special demurrer presented herein bear a close analogy to, if not entirely consistent with, the well-settled rule that a demurrer reaches back to the first error in the pleadings, and judgment may properly be given thereon against the party who committed it. As was said by Marshall, C. J., in Cooke v. Graham's Adm'r, 3 Cranch, 229, 235, 2 L. Ed. 420, "When the whole pleadings are thus spread upon the record by a demurrer, it is the duty of the court to examine the whole, and go to the first error." 6 Enc. Pl. & Prac. 326, and authorities there cited. This general principle is often applied where, as here, the defect pointed out is one of substance, and not of mere form. The end sought to be reached by the demurrer, and the intention of the pleader in regard thereto, are, in substance, identical with the object to be accomplished by a special plea. The object of a plea in equity is to save the parties the expense of a trial upon all the matters alleged in the bill. The purpose of the plea is to reduce the cause, or some part of it, to a single point, which, if sustained, constitutes a complete defense to the suit, or at least to those portions of the bill to which the plea applies.

In Farley v. Kittson, 120 U. S. 303, 314, 7 Sup. Ct. 534, 30 L. Ed. 684, the court said:

"The office of a plea is not, like an answer, to meet all the allegations of the bill, nor, like a demurrer admitting those allegations, to deny the equity of the bill; but it is to present some distinct fact, which of itself creates a bar to the suit, or to the part to which the plea applies, and thus to avoid the necessity of making the discovery asked for, and the expense of going into the evidence at large. Mitf. Pl. (4th Ed.) 14, 219, 295; Story, Eq. Pl. §§ 649, 652."

In Adams, Eq. (8th Ed.) 336, it is said:

"The principle of a defense by plea is that the defendant avers some one matter of avoidance, or denies some one allegation of the bill, and contends that, assuming the truth of all the allegations in the bill, or of all except that which is the subject of denial, there is sufficient to defeat the plaintiff's claim. It is applicable, like a demurrer, to any class of objections, but the most usual grounds of plea are: (1) Want of jurisdiction; (2) personal disability in the plaintiff; (3) a decision already made by the court of chancery, or by some other court of competent jurisdiction."

See, also, U. S. v. California & O. Land Co., 148 U. S. 31, 39, 113 Sup. Ct. 458, 37 L. Ed. 354; 16 Enc. Pl. & Prac. 598.

It is true that the steps to be pursued under a special plea are in some respects differently provided for; but inasmuch as the practice here pursued was not objected to, on that ground, and the hearing on the special demurrer does not otherwise affect the substantial rights of the parties, the irregularities in the practice, if any exist, may be deemed wholly immaterial. U. S. v. Gurney, 4 Cranch, 333, 2 L. Ed. 638; Zimmerman v. So Relle, 25 C. C. A. 518, 80 Fed. 417, 420.

The affirmative facts set forth in the demurrer are shown to exist by an inspection of the records in the original case. I am of opinion that it is the duty of this court to assume, without any proof on either side, the facts which are not controverted by the special de-

murrer or plea to be as set out in the petition; and, with reference to the facts which are controverted by the special demurrer, the court must assume the facts therein set forth to be as therein stated. With reference to the questions thus presented, I am of opinion that this court, after the rendition of the decree, of 1859, under the provisions of the statutes of 1851, 1860, and 1866, retained jurisdiction of the cause, and had the power and authority to reject or approve any survey thereafter made, or to otherwise change or modify the decree, upon proceedings properly brought before it for that purpose. If the decree of 1859 was final in the sense that it determined the validity of the grant, it was not a final decree in the full sense of that term, because it did not determine the correctness of the survey, and could not do so until it was made by the surveyor general and presented to the court. This was accomplished by the orders and decrees of the court made in 1871, and the decree approving the survey must therefore be treated as the final decree of this court. It is not denied that a survey thereunder was made by the surveyor general of the United States and approved by the court, and that subsequent thereto a patent was issued in conformity therewith. This court was thereby deprived of any further jurisdiction in the premises. From the arguments of counsel, it appears that, in the earlier stages of the proceedings in the original case touching the location and boundaries of the grant, the question arose whether the state of California had the superior right by virtue of its sovereignty over the tide and submerged lands in San Francisco Bay, or whether such lands should be included in the grants from the Mexican or Spanish governments. The court was called upon to determine whether or not the boundary line of the lands granted to Peralta should or should not be confined to the high-water mark along the bay and estuary. On this point counsel for the petitioner, in his brief, says:

"Our contention here * * * is that when the decree of this court declared the western boundary line of the rancho of San Antonio, as defined in the grant from Mexico, as being a line along the Bay of San Francisco, it did not mean a line running through the creeks and sloughs with which this shore of the bay from Contra Costa to Santa Clara is intersected. It did not mean running up those creeks and sloughs, and taking the banks of the creeks and sloughs, instead of the shore of the bay, as being the boundary."

This matter is here referred to simply for the purpose of giving a better understanding with reference to the controversy between the parties as to the respective surveys.

The facts set forth in the petition and demurrer present a case which was brought in 1852, under the provisions of the act of congress of 1851, to establish a claim to the lands of the rancho of San Antonio by virtue of a right or title derived from the Spanish and Mexican governments. The various steps taken in said case resulted in the decrees of this court entered in 1859 and 1871, and culminated in the issuance of patents to the claimants in 1877. The quantity of land claimed embraced about 46,685 acres, and the amount embraced in the patents was only 44,333 acres; being 2,352 acres, or thereabouts, less than was included in the survey made in

1895. It will thus be seen at a glance that the present proceeding was instituted more than 40 years after the decree of 1859, upon which petitioner relies, was rendered, and about 28 years after the rendition of the decree of 1871, upon which the United States rely, and over 20 years, after the close of the proceeding in the original case by the issuance of patents in conformity with the decree of this court of 1871. The patentees, under whom petitioner claims, acquiesced in the correctness of the decree of 1871, and accepted the patents issued thereunder without objection. The proceedings were, so far as the record shows, conducted in good faith, and have remained unchallenged for over 20 years, during which time vast interests have been acquired by other parties in the lands not embraced in the patents. Under such a state of facts, it becomes apparent that petitioner must necessarily present a clear case,—one entirely free from doubt as to her legal and equitable rights in the premises,—in order to obtain any relief. The patents, as issued, in effect decide that the lands described therein include all the lands to which the claimants were entitled under the decree and survey. If the decree of 1871, and the survey therein referred to, did not embrace all the lands to which the grantors of the petitioner were entitled, they should have taken the necessary steps to have the same set aside or modified. By the issuance of a patent, presumably at their request, the entire proceedings were at an end. The final decree of this court was enforced, and patents were issued in accordance therewith. The petitioner could not thereafter invoke the power of this court to annul its action, and to proceed under the decree of 1859, which had been changed by the decree of 1871.

The magnitude and importance of the questions herein involved will readily be seen by a careful perusal of the opinions of Mr. Justice Field, of Hoffman, district judge, and Sawyer, circuit judge, in the three cases of U. S. v. Flint (decided in 1876) 4 Sawy. 42, 87, Fed. Cas. No. 15,121. These were suits in equity brought in the United States circuit court of California to vacate certain patents issued by the United States upon confirmed Mexican grants, upon the ground that said patents were obtained by fraud. They were commenced 19 years after the final decree in the United States district court, and 8 years after the issuance of the patent by the government. The act of 1851 is discussed at great length, and a reference thereto is made, for the purpose of giving the views entertained as to its proper construction and effect by the learned judges who participated in the decisions. This court is not, however, called upon, under the pleadings before it, to discuss the merits of the case. The question as to the sufficiency of the petition to require an answer is alone involved. To determine this question it is only necessary, as before stated, to inquire and decide whether, from the averments in the petition and the so-called demurrer, the decree of 1859 is the final decree of this court, and whether this court has any jurisdiction to order a patent to be issued as prayed for by petitioner. The contention of petitioner is that the decree of 1859 is the final decree, and that the court was not possessed of any jurisdiction to thereafter change or alter the same, and that, under the provisions of section 8 of the act of

1866, it became the duty of the surveyor general of the United States for California to survey the land as described in said decree, and that the court had no power or authority to reject or disapprove of such survey, and upon such survey it became the duty of the United States to issue its patent in accordance therewith. An examination of the provisions of the statute, and of the authorities upon which petitioner relies, fails to convince me of the soundness of this contention.

Section 13 of the act of 1851 provides, among other things, that all lands, the claims to which shall be finally decided by the district or supreme court, shall be deemed, held, and considered as part of the public domain of the United States, and that:

"For all claims finally confirmed by the said commissioners, or by the said district or supreme court, a patent shall issue to the claimant upon his presenting to the general land office an authentic certificate of such confirmation, and a plat or survey of the said land, duly certified and approved by the surveyor general of California, whose duty it shall be to cause all private claims which shall be finally confirmed to be accurately surveyed, and to furnish plats of the same." 9 Stat. 631.

The amendatory act of 1860 requires the surveyor general, after making a survey in pursuance with the provisions of section 13 of the act of 1851, to give notice of such survey by publication. Section 2 of this act (1860) provides:

"That the district courts of the United States for the Northern and Southern districts of California are hereby authorized, upon the application of any party interested, to make an order requiring any survey of a private land claim within their respective districts to be returned into the district court for examination and adjudication, and on the receipt of said order, duly certified by the clerk of either of said courts, it shall be the duty of the surveyor general to transmit said survey and plat forthwith to the said court."

Section 6 provides:

"That all surveys and locations heretofore made and approved by the surveyor general of California, which have been returned into the said district courts, or either of them, or in which proceedings are now pending for the purpose of contesting or reforming the same, are hereby made subject to the provisions of this act." 12 Stat. 33.

Section 8 of the act of July 23, 1866, entitled "An act to quiet land titles in California," upon which petitioner chiefly relies, reads as follows:

"That in all cases where a claim to land by virtue of a right or title derived from the Spanish or Mexican authorities has been finally confirmed, and a survey and plat thereof shall not have been requested within ten months from the passage of this act, as provided by sections six and seven of the act of July first, eighteen hundred and sixty-four, 'To expedite the settlement of titles to lands in the state of California,' and in all cases where a like claim shall hereafter be finally confirmed, and a survey and plat thereof shall not be requested, as provided by said sections within ten months after the passage of this act, or any final confirmation hereafter made, it shall be the duty of the surveyor general of the United States for California, as soon as practicable after the expiration of ten months from the passage of this act, or such final confirmation hereafter made, to cause the lines of the public surveys to be extended over such land, and he shall set off in full satisfaction of such grant, and according to the lines of the public surveys, the quantity of land confirmed in such final decree, and as nearly as can be done in accordance with such decree." 14 Stat. 218.

What is the jurisdiction, extent, and power of the district court and of the surveyor general under the provisions of these acts? At the time of the rendition of the decree of 1859, grave doubts existed as to whether or not the district court had the power under that act to reject or approve the survey required to be made by the surveyor general for California. With reference to the act of 1851 numerous authorities have been cited by the respective counsel, a few of which will be noticed:

In U. S. v. Fossatt, 21 How. 445, 450, 16 L. Ed. 185, where this court, presided over by the learned district judge who rendered the decrees under consideration in the present case, had, in conformity with the directions of the decree, declared the external lines on three sides of the tract claimed, leaving the other line to be completed by a survey to be made, and from this decree the appeal was taken, the supreme court said:

"It is asserted on the part of the appellants that the district court has no means to ascertain the specific boundaries of a confirmed claim, and no power to enforce the execution of its decree, and consequently cannot proceed further in the cause than it has done. The thirteenth section of the act of 3d March, 1851, makes it the duty of the surveyor general to cause all private claims which shall be finally confirmed to be accurately surveyed, and to furnish plats of the same. It was the practice under the acts of 1824 and 1828 (4 Stat. 52, 284) for the court to direct their mandates specifically to the surveyor designated in those acts. And in the case Ex parte Sibbald v. U. S., 12 Pet. 488, 9 L. Ed. 1167. the duty of the surveyor to fulfill the decree of the court, and the power of the court to enforce the discharge of that duty, are declared and maintained. The duties of the surveyor begin under the same conditions, and are declared in similar language, in the acts of 1824, 1825, and of 1851. The opinion of the court is that the power of the district court over the cause, under the acts of congress, does not terminate until the issue of a patent conformably to the decree."

In June, 1859, Judge Hoffman, in U. S. v. Folsom, 7 Sawy. 602, 612–617, Fed. Cas. No. 15,127, was again called upon to pass upon the question. In his opinion he states:

"A decree having been entered at a former term confirming the claim in this case according to the boundaries mentioned in the grant, the appeal therefrom was, by consent of the district attorney, acting under the instructions of the attorney general, dismissed. A motion is now made that the survey be brought into court, to be examined and passed upon, and that a final decree be entered confirming to the claimants the lands so surveyed. This motion is made that the court may exercise the jurisdiction which, by the recent decision of the supreme court in the case of U. S. v. Fossatt, 21 How. 445, 16 L. Ed. 185, it is supposed to possess."

He then reviewed at great length the opinion of the supreme court in that case. His views in regard thereto are interesting and instructive. Among other things, he said:

"That the supreme court have, in their opinion, laid down principles generally applicable to all cases, I think, is evident. In the first place, they discuss and decide the point whether this court has, by the act of 1851, any authority to decide questions of extent, location, and boundary. Such questions, they declare, may be 'essential in determining the validity of a claim,' and the power to decide upon 'validity' involves the power to decide upon all questions of boundary. * * * I therefore think that in all cases where a decree of confirmation has been entered, and a survey under it has been made, on which a patent is about to issue, which survey is objected to as erroneous, it is the

duty of the court to direct the survey to be returned to it, that it may hear and determine the questions of location and boundary which may be raised."

So much for the act of 1851. We now direct our attention to the views expressed by the courts with respect to the amendatory act of 1860:

In U..S. v. Halleck, 1 Wall. 439, 454, 17 L. Ed. 664, Mr. Justice Field, in delivering the opinion of the court, after referring to the case of U. S. v. Fossatt, and to the fact that the district court had ordered the new survey to be returned into court, and that proceedings in regard thereto were pending at the time of the passage of the act of June 14, 1860, speaking with reference to said act, said:

"Whatever question might be raised as to the jurisdiction of the district court to supervise the survey previous to that act, there can be none since its passage. That act applies not merely to surveys subsequently made, but also to such surveys as had been previously made and approved by the surveyor general, and returned into the district court upon objections to their correctness."

In the Fossat or Quicksilver Mine Case, 2 Wall. 649, 712, 17 L. Ed. 739, objections were made to the survey and location on the ground, among others, that the proceedings under the act of 1860 were not judicial, but purely executive and ministerial. It was therefore contended that the appeal from the order or the decree of the district court regulating the survey and location ought not be entertained, because the court could only determine the validity of the grant, leaving its survey and location to the executive department of the government. Mr. Justice Nelson, in delivering the opinion of the court, in reply to these propositions said:

"We need only refer to the opinion of this court in the present case the second time it was before us, as presenting a conclusive refutation of these several positions. The fundamental error in the argument is in assuming that the survey and location of the land confirmed are not proceedings under the control of the court rendering the decree, and hence not a part of the judicial action of the court. These proceedings are simply in execution of the decree, which execution is as much the duty of the court, and as much within its competency, as the hearing of the cause and the rendition of its judgment,— as much so as the execution of any other judgment or decree rendered by the court. This power has been exercised by the court ever since the Spanish and French land claims were placed under its jurisdiction. * * * The powers of the surveyor general under these acts were as extensive and as well defined as under the act of 1851. The act of 1860 did not enlarge or in any way affect his powers. They remained the same as before."

With the view I take of the averments in the pleadings herein, I deem it unnecessary to discuss at any length the provisions of section 8 of the act of 1866, because, if the decree of 1859 is not the final decree, that act has no application to the proceedings herein. If the court retained jurisdiction under the acts of 1851, 1860, and 1864, up to the time of the decree of 1871, and thereafter until the patent was issued, that fact disposes of the motion made by the petitioner. The act of 1866 is not, and could not be, applicable to this case, except upon the theory of the petitioner, that the decree of 1859 is the final decree, and that no survey was made thereunder until 1895, whereas the record shows, as averred in the pleading of the United States, that the decree of 1859 was supplemented and modified upon application of parties interested in some

of the lands embraced therein by the decree of 1871. The act of congress of 1866 may be more general in its character, scope, and effect than the previous acts. It will be observed, however, that the act does not repeal the provisions of the act of 1851, or of the amendatory act of 1860, or of the act of 1864.

But if it should be conceded that petitioner's contention is true, viz. that this court had no jurisdiction, power, or authority over the survey under the act of 1866, and that the land department was thereby vested with the exclusive jurisdiction to judicially determine whether or not the survey of 1895 conformed to the decree of 1859, the question would then arise whether this court has any jurisdiction in the present proceedings to compel the commissioner of the general land office, the secretary of the interior, or the executive department of the government, to cause a patent to be issued in conformity therewith. Certainly not. If this court had no power to decide questions of locality and survey, and the land department was vested with exclusive jurisdiction in regard thereto, how could this court in the present proceeding set aside the rulings in the land department refusing to grant a patent in conformity with the survey made in 1895? There are no provisions in the act of 1866 to compel the commissioner of the general land office or the secretary of the interior to approve the survey if it is deemed to be erroneous, or to give it any effect whatever if it is disapproved of for good reasons. For aught that appears in the petition, the survey of 1895 might have been rejected because it did not, in the opinion of the land department, conform to the decree; or the patent then applied for may have been refused because the decree of the district court of 1859 was not the final decree, and that the decree of 1871 had been enforced by the issuance of patents in conformity therewith, and that the questions of title and boundaries of the grant were thereby finally disposed of. No case has been cited by petitioner's counsel that would authorize this court to order the government or the officers of the land department to issue a patent in accordance with that survey. None having been found, it will be presumed that none exists. If the patents issued, in pursuance of and in conformity with the decree of this court in 1871, approving the survey made by the surveyor general, are (as hereinbefore declared to be) valid, then it necessarily follows that the relief asked for cannot be granted.

In De Guyer v. Banning, 167 U. S. 723, 736, 17 Sup. Ct. 937, 42 L. Ed. 340, et seq., which was an independent action in ejectment, the plaintiffs offered in evidence in support of their title a patent which did not grant lands that were excluded from the surveyed claim, and contended that they had the right to go behind both the survey and patent, and recover the possession of the lands so excluded, the same as they would have had the right to do if the lands had been included in both the survey and the patent. The court, with reference to this contention, said:

"In our opinion, if those who obtained the decree of confirmation objected to the survey as not being in conformity with that decree, their objection should have been made known to the district court before the survey was transmitted

to the general land office, or at least before it was acted upon and made the basis of a patent. The patent was not issued until nearly a year after the survey was made and certified. Under the act of 1851, it was within the power of the district court to have required a survey in exact conformity with its decree. Its jurisdiction over the subject did not end with the decree. The surveyor general was required by the statute (section 13) to cause an accurate survey to be made of all private claims finally confirmed under the act of 1851, and to furnish plats of the same. If he misinterpreted the decree; if he made an inaccurate survey, and excluded from it lands that were confirmed to the original claimants,—the court had authority to compel the proper execution of its decree."

After referring to many decisions of the supreme court upon this subject, the court said:

"We are of opinion that while it may be true, in some cases, that an action to recover possession of lands confirmed to a claimant under the act of 1851 can be maintained before a patent is issued, yet a patent issued avowedly in execution of such decree was conclusive between the United States and the claimants, and, until canceled, it alone determines, in an action to recover possession, the location of the lands that passed under the decree,"

—And thereafter discussed at great length the effect of a patent, to which opinion reference is here made, and to the authorities there cited.

See, also, De Guyer v. Banning, 91 Cal. 400, 402, 27 Pac. 761, and authorities there cited.

In Chipley v. Farris, 45 Cal. 527, 538, which involved the title to lands alleged to have been covered by a Mexican grant, and in respect to which there were proceedings under the act of congress of March 3, 1851, it was contended on one side that the patent was conclusive upon all points of the case, and put an end to all questions of lines and boundaries. On the other side it was insisted that the confirmation of the claim gave the claimant a perfect title, and that he could not be devested of title to any lands embraced in the decree of confirmation by a patent that excluded a portion of them. In answering these contentions the court said:

"A patent issued under the act of 1851 is, as has often been held by this court, the final act in proceedings instituted for the confirmation of the claim of the patentee to land which had been granted by the former government, and for the segregation of such land from the public lands of the United States; and it is a record which binds both the government and the claimant, and cannot be attacked by either party, except by direct proceedings instituted for that purpose. Leese v. Clark, 18 Cal. 535. While it stands, the claimant, or those deriving title through him, will not be permitted to aver that the claim comprised other or different lands from those mentioned in the patent. Such being the nature and effect of the patent, the evidence offered by the plaintiffs to prove that the patent was void was properly excluded. It is unnecessary, in order to give effect to a patent, to show an acceptance of it by the patentee. The general rule is that a patent takes effect upon its being issued, and it is unnecessary to show a delivery to or an acceptance by the patentee. * * * It is contended by the plaintiffs that the survey, which is incorporated into the patent, does not accord with the decree of confirmation, and that they are entitled to rely upon the decree—which is also incorporated into the patent—for title to lands within the decree, but not within the survey. This position cannot be maintained consistently with the views already expressed as to the nature and effect of the patent. The patent purports to convey the lands described in the survey, and its scope cannot be extended, nor, on the other hand, can it be limited, by showing that the decree comprised a greater or less area than the survey. Nor can the claimant, after admitting, as he must, the conclusive effect of the patent, make out title to lands not

conveyed by the patent, by the production of the proceedings which culminated in the patent. The patent, while it remains in force, conclusively determines what lands the claimant was entitled to under his claim and the decree of confirmation. The claimant can neither reform the patent, nor show that it is in any respect incorrect, in an action of ejectment."

The merits of this case have been settled by the final decree of this court, and the patents issued in conformity therewith. If the present motion could be sustained, and a new order made in disregard of the final decree of this court, it would open up a new field of inquiry, and create future litigation that would be endless. As was said by Mr. Justice Field in U. S. v. Flint, supra:

"Of course, under such a system of procedure, the settlement of land titles in the state would be postponed indefinitely, and the industries and improvements which require for their growth the assured possession of land would be greatly paralyzed."

The obligations resting upon the government concerning the Mexican and Spanish grants are purely political in their character, and are settled and discharged in such manner and upon such terms as they deem expedient. To quote the opinion of Mr. Justice Field in Beard v. Federy, 3 Wall. 478, 492, 18 L. Ed. 88:

"By the act of March 3, 1851, they have declared the manner and the terms on which they will discharge this obligation. They have there established a special tribunal, before which all claims to land are to be investigated; required evidence to be presented respecting the claims; appointed law officers to appear and contest them on behalf of the government; authorized appeals from the decisions of the tribunal, first to the district, and then to the supreme, court; and designated officers to survey and measure off the land when the validity of the claims is finally determined. When informed, by the action of its tribunals and officers, that a claim asserted is valid and entitled to recognition, the government acts, and issues its patent to the claimant. This instrument is therefore record evidence of the action of the government upon the title of the claimant. By it the government declares that the claim asserted was valid under the laws of Mexico; that it was entitled to recognition and protection by the stipulations of the treaty, and might have been located under the former government, and is correctly located now, so as to embrace the premises as they are surveyed and described. As against the government, this record, so long as it remains unvacated, is conclusive. And it is equally conclusive against parties claiming under the government by title subsequent. It is in this effect of the patent as a record of the government that its security and protection chiefly lie."

The presumption of the law always is that the officers of the executive department of the government, who are specially charged with the supervision of matters in relation to the issuance of patents, did their duty; and if, under any circumstances, their action can be sustained, it must be presumed that such circumstances existed. I am of opinion that it is the duty of this court, under the facts herein presented, to decline to review the action of the executive department in refusing to issue a patent under the survey of 1895, and to decline to grant the motion of petitioner to compel them so to do. The affirmative facts set forth in the demurrer constitute a complete defense and bar to the relief prayed for by petitioner. The entire matter is res judicata. From the views herein expressed, and conclusions reached, it necessarily follows that the demurrer should be sustained, and the petition dismissed. It is so ordered.